[No. B209855. Second Dist., Div. Seven. Apr. 13, 2009.]

GABRIELA ROMAN, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
FLO-KEM, INC., Real Party in Interest.

1466

**COUNSEL**

Kokozian & Nourmand and Michael Nourmand for Petitioner.

No appearance for Respondent.

Loeb & Loeb, Michelle M. La Mar, Jon Daryanani and Erin Smith for Real Party in Interest.

**OPINION**

**PERLUSS, P. J.**—An application for employment contains an arbitration clause providing, "I agree, in the event I am hired by the company, that all disputes and claims that might arise out of my employment with the company will be submitted to binding arbitration." Is the arbitration agreement one-sided, obligating the applicant-employee (if she is hired) to arbitrate her claims without imposing a reciprocal requirement on the employer in connection with its claims against the employee?

In her petition for writ of mandate challenging the trial court's order compelling arbitration of her discrimination and wrongful termination claims against her employer, Flo-Kem, Inc., under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), Gabriela Roman contends this "I agree" language manifests only a unilateral obligation to arbitrate. When the adhesive nature of the contract is also taken into account, Roman asserts the agreement to arbitrate is procedurally and substantively unconscionable and, therefore, unenforceable.

The trial court properly granted Flo-Kem's petition to compel arbitration. Absent some indicia in the agreement that arbitration is limited to the employee's claims against the employer, the use of the "I agree" language in an arbitration clause that expressly covers "all disputes" creates a mutual agreement to arbitrate all claims arising out of the applicant's employment. Accordingly, whatever elements of procedural unconscionability may be present in employment adhesion contracts, the agreement to arbitrate does not lack mutuality of obligation so as to make it substantively unconscionable.

## FACTUAL AND PROCEDURAL BACKGROUND

Roman began working for Flo-Kem in 1997 as a receptionist; she was later promoted to the accounts receivable department. In February 2007 she was diagnosed with depression and placed on disability leave. Roman alleges she was unlawfully terminated later that year.

After filing a complaint with the Department of Fair Employment and Housing (DFEH) and receiving notice of a right to sue, in September 2007 Roman filed a complaint against Flo-Kem in the Los Angeles County Superior Court asserting statutory claims under FEHA for disability discrimination, failure to accommodate, failure to engage in a timely and good faith interactive process and retaliation and a common law claim for wrongful termination in violation of public policy. In November 2007 Flo-Kem demurred to the complaint without referring to the arbitration provision. Flo-Kem subsequently served a notice of deposition and request for production of documents on Roman, responded to Roman's requests for written discovery with objections only (no substantive responses) and moved to compel responses to the discovery it had served, all without raising the issue of arbitration.

In December 2007, before the hearings on the motion to compel and the demurrer, Flo-Kem petitioned the court to compel arbitration based on an arbitration provision in Roman's employment application, which she had signed just before her hire in November 1997.

The arbitration provision, contained in a separate paragraph initialed by Roman, provided, "I hereby agree to submit to binding arbitration all disputes and claims arising out of the submission of this application. I further agree, in the event that I am hired by the company, that all disputes that cannot be resolved by informal internal resolution[1] which might arise out of my employment with the company, whether during or after that employment, will be submitted to binding arbitration. I agree that such arbitration shall be conducted under the rules of the American Arbitration Association. This application contains the entire agreement between the parties with regard to dispute resolution, and there are no other agreements as to dispute resolution, either oral or written."

Roman opposed the petition to compel arbitration, arguing Flo-Kem had waived any right it may have had to arbitrate the dispute by engaging in discovery in the action. In addition, she argued the arbitration agreement was unenforceable. In particular, Roman asserted the agreement was procedurally unconscionable because it was contained in a contract of adhesion and substantively unconscionable because it lacked mutuality of obligation, requiring her to arbitrate her claims without limiting Flo-Kem's right to a judicial forum. Roman also argued the arbitration agreement, which incorporated the rules of the American Arbitration Association (AAA), was substantively unconscionable in other respects because AAA rules in effect in 1997

---

[1] The undisputed evidence established that Flo-Kem had no internal dispute resolution procedures.

were in conflict with the Supreme Court's articulation of minimum safeguards in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).)

In its reply in support of its petition, Flo-Kem submitted a declaration from John Grimes, its chief operating officer. Grimes explained he began working at Flo-Kem in 2004; Roman's lawsuit was the first employment action (other than workers' compensation) since he began at the company; and, at the time Flo-Kem was served with the complaint, he was unaware of the arbitration provision in the employment applications. Flo-Kem also argued its delay in asserting its right to arbitrate was minimal and the discovery it had undertaken was not in any way inconsistent with proceeding by arbitration.

On July 8, 2008 the trial court granted Flo-Kem's petition to compel arbitration. Although the court agreed with Roman that the adhesive nature of the agreement created an element of procedural unconscionability, it rejected Roman's arguments concerning substantive unconscionability, finding the arbitration agreement required both Roman and Flo-Kem to arbitrate "all disputes" and, therefore, did not lack mutuality of obligation. In its written ruling the trial court did not address Flo-Kem's waiver argument.

On August 8, 2008 Roman filed a petition for writ of mandate challenging the trial court's order compelling arbitration. After requesting informal opposition to the petition, on November 13, 2008 we issued an order to show cause as to why the requested relief should not be granted. On December 2, 2008 Flo-Kem filed its return to the petition, and on December 15, 2008 Roman filed her reply.

## DISCUSSION

### 1. *Standard of Review*

■ A petition to compel arbitration based on a written arbitration agreement must be granted unless grounds exist to revoke the agreement. (Code Civ. Proc., §§ 1281, 1281.2, subd. (b).) An agreement to arbitrate, like any other contract, is subject to revocation if the agreement is unconscionable. (See Civ. Code, § 1670.5, subd. (a) ["[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result"]; *Armendariz, supra,* 24 Cal.4th at p. 98.)

Absent conflicting extrinsic evidence, the validity of an arbitration clause, including whether it is subject to revocation on unconscionability grounds, is

a question of law subject to de novo review. (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1277 [16 Cal.Rptr.3d 296]; *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1527 [60 Cal.Rptr.2d 138].)

Generally, the determination whether a party to the arbitration agreement has waived the right to arbitrate is a question of fact that we review for substantial evidence. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 [8 Cal.Rptr.3d 517, 82 P.3d 727] (*St. Agnes*); *Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 557 [94 Cal.Rptr.2d 201] ["There is no single determinative test of waiver, and the question for the trial court is one of fact. For us, the question is whether the trial court's decision is supported by substantial evidence."].) " 'When, however, the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law . . . .' " (*St. Agnes*, at p. 1196.)

### 2. *Governing Law on Unconscionability*

■  Unconscionability has both procedural and substantive elements. (*Armendariz, supra*, 24 Cal.4th at p. 99; *Jones v. Wells Fargo Bank* (2003) 112 Cal.App.4th 1527, 1539 [5 Cal.Rptr.3d 835].) Although both must appear for a court to invalidate a contract or one of its individual terms (*Armendariz*, at p. 114; *Wayne v. Staples, Inc.* (2006) 135 Cal.App.4th 466, 482 [37 Cal.Rptr.3d 544] (*Wayne*); *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 174 [116 Cal.Rptr.2d 671]), they need not be present in the same degree: "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz*, at p. 114; see *Wayne*, at p. 482.)

Procedural unconscionability focuses on the elements of oppression and surprise. (*Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 160 [30 Cal.Rptr.3d 76, 113 P.3d 1100]; *Wayne, supra*, 135 Cal.App.4th at pp. 480–481.) " ' " 'Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice . . . . Surprise involves the extent to which the terms of the bargain are hidden in a "prolix printed form" drafted by a party in a superior bargaining position.' " ' " (*Wayne*, at p. 480; see also *Mercuro v. Superior Court, supra*, 96 Cal.App.4th at p. 174 ["procedural unconscionability focuses on the oppressiveness of the stronger party's conduct"].)

Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create " ' "overly harsh" ' " or " ' "one-sided" ' results" (*Armendariz, supra*, 24 Cal.4th at p. 114; accord, *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071 [130 Cal.Rptr.2d 892, 63 P.3d

979] (*Little*)), that is, whether contractual provisions reallocate risks in an objectively unreasonable or unexpected manner. (*Jones v. Wells Fargo Bank, supra*, 112 Cal.App.4th at p. 1539.) Substantive unconscionability "may take various forms," but typically is found in the employment context when the arbitration agreement is "one-sided" in favor of the employer without sufficient justification, for example, when "the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration." (*Little*, at pp. 1071–1072; see also *Armendariz*, at p. 119 ["it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities' "]; *Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1330 [83 Cal.Rptr.2d 348] [" '[s]ubstantive unconscionability' focuses on the terms of the agreement and whether those terms are 'so one-sided as to "*shock the conscience.*" ' "].)

### 3. *The Arbitration Agreement Is Not Unconscionable*

#### a. *The adhesive nature of the agreement is not dispositive*

■ Roman contends the arbitration agreement was procedurally unconscionable because it was part of a contract of adhesion, that is, it was contained in a preprinted form prepared by the employer and presented to Roman on a take-it-or-leave-it basis with no opportunity to negotiate. The Supreme Court has acknowledged that adhesion contracts in the employment context typically contain some measure of procedural unconscionability. (See, e.g., *Armendariz, supra*, 24 Cal.4th at p. 115 ["in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement"]; accord, *Little, supra*, 29 Cal.4th at p. 1071.)

Here, there is no dispute the arbitration agreement was part of an adhesion contract.[2] Nonetheless, whatever procedural unfairness is inherent in an

---

[2] The adhesive nature of the contract will not always make it procedurally unconscionable. When bargaining power is not grossly unequal and reasonable alternatives exist, oppression typically inherent in adhesion contracts is minimal. (See, e.g., *Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1056 [107 Cal.Rptr.2d 645] [contract of adhesion is not dispositive on question of procedural unconscionability; where complaining party had access to alternatives, procedural unfairness of adhesive contract minimal]; *Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal.App.3d 758, 767 [259 Cal.Rptr. 789] [same].)

adhesion agreement in the employment context, it was limited in this case. The arbitration provision was not buried in a lengthy employment agreement. Rather, it was contained on the last page of a seven-page employment application, underneath the heading "Please Read Carefully, Initial Each Paragraph and Sign Below." It was set forth in a separate, succinct (four-sentence) paragraph that Roman initialed, affirming she had seen it. (Cf. *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1252–1253 [45 Cal.Rptr.3d 293] (*Higgins*) [procedural unconscionability high when arbitration provision was buried in 24-page, single-spaced document and, "[a]lthough petitioners were required to place their initials in boxes adjacent to six other paragraphs, no box [for initials] appeared next to the arbitration provision"].)

■ In any event, whatever measure of procedural unconscionability may be present in this case involving an adhesive employment agreement between parties with unequal bargaining power, procedural unconscionability alone does not render an agreement unenforceable. There must also be some measure of substantive unconscionability. (*Little, supra*, 29 Cal.4th at p. 1071; *Armendariz, supra*, 24 Cal.4th at p. 114.) Roman asserts there is. Emphasizing the "I agree" language in an agreement that provides "all disputes" arising out of her employment "will be submitted to binding arbitration," Roman insists the clause must be interpreted to apply only to her claims, and not Flo-Kem's. The argument is not persuasive.

### b. *The arbitration agreement is bilateral*

Roman relies primarily on the Court of Appeal's analysis in *Higgins, supra*, 140 Cal.App.4th 1238 to support her argument the arbitration provision at issue here creates only a unilateral obligation to arbitrate. In *Higgins* a husband and wife and their children opened their home to take care of five siblings, ages 21, 19, 17, 16 and 14, after the siblings' parents died. A home renovation reality television show heard the news and, pursuant to a contract with the siblings and the homeowners, razed the homeowners' home, built a new home with adequate space for the siblings, paid the mortgage and then broadcast the story. Soon after the house was built, the homeowners allegedly made the siblings (including their adult sibling guardian) leave the home. When the reality show featuring the story was later rebroadcast, the siblings sued the homeowners and the television production company responsible for the show.

The television defendants petitioned the trial court to compel arbitration of the claims against it pursuant to the arbitration provision in a contract and release signed by the siblings and their guardian in connection with their appearance on the show. The arbitration agreement provided, "I agree that

any and all disputes or controversies arising under this Agreement or any of its terms, any effort by any party to enforce, interpret, construe, rescind, terminate or annul this Agreement, or any provision thereof, and any and all disputes or controversies relating to my appearance or participation in the Program, shall be resolved by binding arbitration in accordance with the following procedure . . . . All arbitration proceedings shall be conducted under the auspices of the American Arbitration Association . . . . I agree that the arbitrator's ruling, or arbitrators' ruling, as applicable, shall be final and binding and not subject to appeal or challenge. . . . The parties hereto agree that, notwithstanding the provisions of this paragraph, Producer shall have a right to injunctive or other equitable relief as provided for in California Code of Civil Procedure [section] 1281.8 or other relevant laws." (*Higgins, supra,* 140 Cal.App.4th at p. 1243.)

The siblings opposed arbitration, asserting the agreement to arbitrate was unconscionable and therefore unenforceable. The trial court ordered arbitration. Our colleagues in Division Eight of this court granted a petition for writ of mandate and directed the trial court to vacate its order compelling arbitration. (*Higgins, supra,* 140 Cal.App.4th at p. 1255.)

The *Higgins* court began its analysis by emphasizing the agreement's heightened level of procedural unconscionability, observing the arbitration clause was "buried" in a lengthy single-spaced form document (containing 24 single-spaced pages with several more pages attached as exhibits) drafted by the television defendants and given to young, unsophisticated and "emotionally vulnerable" orphans with little time or ability to understand or review it. It also found troubling that, although other provisions of the agreement included a space next to the paragraph to be initialed separately, the arbitration provision did not. (*Higgins, supra,* 140 Cal.App.4th at p. 1253.)

In addition to this "strong showing of procedural unconscionability" (*Higgins, supra,* 140 Cal.App.4th at p. 1253), the court also found the agreement to arbitrate was unilateral and, therefore, substantively unconscionable. According to the court, the arbitration agreement's "I agree" language referred exclusively to the siblings and included no corresponding reference to the television defendants or their duty to arbitrate. The court rejected the television defendants' arguments that the language requiring "all disputes" arising out of the agreement be arbitrated reflected a mutual duty to arbitrate. The court found that argument "miss[ed] the point: only one side ([the siblings) had] agreed to that clause." (*Id.* at pp. 1253–1254.)

Contrary to Roman's assertion, *Higgins* is not "on all fours" with this case. The procedural unconscionability in the *Higgins* contract was far greater than arguably exists in the instant case. As discussed, the arbitration provision,

separately initialed by Roman, is contained in a relatively short agreement rather than buried in a 24-page agreement with multiple attachments, and is written in clear, understandable language. More significantly, in addition to the "I agree" language itself, the *Higgins* court pointed to other aspects of the arbitration agreement, such as the television defendants' unilateral reservation of the right to seek injunctive relief without identifying the corresponding business necessities for reserving that right, that reinforced its conclusions on lack of mutuality and substantive unconscionability. (See *Higgins, supra,* 140 Cal.App.4th at p. 1254.) No comparable provisions exist in the arbitration clause at issue here. In sum, we simply do not believe the *Higgins* court intended to hold the mere inclusion of the words "I agree" by one party in an otherwise mutual arbitration provision destroys the bilateral nature of the agreement. (Cf. *Little, supra,* 29 Cal.4th at pp. 1069–1070 [arbitration agreement providing, " 'I agree that any claim, dispute, or controversy' " arising from employment will be subject to arbitration and " 'I understand by agreeing to this binding arbitration provision, both I and the Company give up our rights to trial by jury' " was not substantively unconscionable].)

Even if the language in the Flo-Kem arbitration provision were somehow ambiguous on this point, given the public policy favoring arbitration (see *St. Agnes, supra,* 31 Cal.4th at p. 1204 [Legislature has expressed " ' "a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution" ' "]) and the requirement we interpret the provision in a manner that renders it legal rather than void (see Civ. Code, § 3541 ["[a]n interpretation which gives effect [to agreement] is preferred to one which makes void"]; Civ. Code, § 1643 [if possible without violating the parties' unambiguous intent, a contract is interpreted so as to make it "lawful, operative, definite, reasonable, and capable of being carried into effect"]), we would necessarily construe the arbitration agreement as imposing a valid, mutual obligation to arbitrate. Indeed, if Flo-Kem had sued Roman and Roman sought arbitration, there is no doubt we would interpret the agreement to bind Flo-Kem to arbitrate. (See Civ. Code, § 1654 [when ambiguity not resolved by extrinsic evidence, "language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist"].) We see no reason to reach a different result when Flo-Kem is the one seeking arbitration.

Roman's reliance on *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267 [132 Cal.Rptr.2d 116] (*O'Hare*) is simply misplaced. *O'Hare* involved an employment agreement that provided, " 'You [the employee] therefore agree that MRC, in addition to all other rights, shall have the right to file a lawsuit, in any court of competent jurisdiction, to enjoin you from engaging in such activities and to seek any other equitable relief that may be appropriate.' " (*Id.* at p. 271, italics omitted.) Section 12 of the employment contract contained an arbitration clause providing, " 'Any claim

that you may have arising out of or relating to this Agreement, or the breach thereof, or your employment by MRC, or the termination of your employment by MRC, shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect . . . . There shall be no pre-arbitration discovery. Neither MRC's right to file a lawsuit seeking an injunction nor MRC's right to injunctive relief is subject to arbitration or to the provisions of this Section 12.' " (*Ibid.*, italics omitted.)

Our Division Four colleagues concluded the agreement to arbitrate was unconscionable and unenforceable. (*O'Hare, supra*, 107 Cal.App.4th at p. 279.) The court observed that section 11 of the contract, granting MRC the right to file a lawsuit for injunctive relief, *in addition to all other rights*, expressly allowed the employer to sue the employee in court. (See *id.* at p. 275 ["The inclusion of the phrase 'in addition to all other rights' can only mean MRC was similarly preserving the right to file any lawsuit it felt in its interest. Otherwise, the phrase 'in addition to all other rights' has no import."].) In light of section 11's reservation of the employer's right to sue, the court explained, it made no sense to interpret section 12's arbitration clause to apply bilaterally. (See *ibid.* ["the immediate juxtaposition of section 11 (reserving MRC's right to file an action for injunctive and equitable relief) [in addition to other rights] with section 12 (compelling O'Hare to arbitrate all of his claims) clearly conveys MRC has no obligation to arbitrate any claim it may have against O'Hare"].) No similar employer reservation of rights is contained in Roman's arbitration agreement.

*Nyulassy v. Lockheed Martin Corp., supra*, 120 Cal.App.4th 1267 (*Nyulassy*), on which Roman also relies, is similarly inapposite. In *Nyulassy* the predispute arbitration clause, contained in the employment agreement, provided, " 'If I object to or disagree with any Lockheed Martin personnel decision relating to or affecting the terms and conditions of my Lockheed Martin employment . . . , I agree I shall seek to resolve my objection or disagreement *through discussions within successive levels of my supervisory chain of command*, until the objection or disagreement is resolved or I have had the opportunity to discuss the matter with the Vice President, Human Resources, or such other senior management official responsible for human resources matters within the Lockheed Martin business unit to which I am assigned. I understand and agree that if the dispute or controversy is not resolved to my satisfaction by means of such discussion(s), my sole and exclusive remedy and avenue of redress is through arbitration proceedings conducted in accordance with the employment dispute resolution rules of the American Arbitration Association. . . . I understand that by agreeing to arbitration of any and all such disputes and controversies . . . I hereby knowingly, willingly and advisedly waive any and all rights to pursue judicial proceedings or actions and remedies which I might otherwise have been

entitled to pursue, or which might otherwise have been available to me, in the absence of the waiver established by this sentence. . . .' " (*Id.* at pp. 1273–1274, fn. 4, capitalization and italics omitted.) The agreement also required the employee to file a demand within 180 days of the employer's termination decision and provided the failure to satisfy the limitations period resulted in a waiver of the employee's claims. (*Ibid.*)

The Court of Appeal determined the agreement was unilateral and contained other substantively unconscionable elements. (*Nyulassy, supra,* 120 Cal.App.4th at pp. 1282–1283.) Unlike the agreement in the instant case, which covered "all disputes," the arbitration provision in *Nyulassy* was triggered only by the employee's "objection or disagreement" with a personnel decision relating to or affecting his or her employment. By its terms, it applied only to the employee's claims and not to the employer's. Moreover, the arbitration agreement in *Nyulassy* provided a shortened contractual statute of limitations, requiring the employee to file a written demand for arbitration within 180 days from when the dispute arose or waive the claim entirely, thereby limiting the employee's statutorily granted FEHA rights. Thus, the agreement in *Nyulassy* was far different from the agreement in this case, which, by its terms, applied to "all disputes," whether initiated by the employee or by Flo-Kem and did not purport to deprive the employee of any statutory rights under FEHA.

    c.   *The arbitration agreement does not limit Roman's statutory
         FEHA rights or impose an undue limitation on discovery*

Roman also contends the arbitration agreement, incorporating the 1997 AAA rules, unconscionably limits discovery. In 1997 the AAA rules provided (as they did in 2007 at the time arbitration was demanded), "[t]he arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." Roman asserts this is unconscionable because it unfairly delegates to the arbitrator the absolute discretion to deny depositions, contrary to Code of Civil Procedure section 2025.010 et seq., which affords litigants the absolute right to take depositions.

In *Armendariz, supra,* 24 Cal.4th 83, the Supreme Court rejected an employee's similar claim that a purportedly inadequate provision for discovery in an arbitration agreement was a proper ground for denying arbitration of their FEHA claims. Although the Court observed "some discovery is often necessary for vindicating a FEHA claim" (*Armendariz,* at p. 106), it held "whether or not the employees in this case are entitled to the full range of discovery provided in Code of Civil Procedure section 1283.05, they are at

least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, *as determined by the arbitrator(s) . . . ." (Ibid.,* italics added.) Similarly, in this case the AAA's employment dispute rules applicable to Roman's arbitration proceeding expressly authorized the arbitrator to order "such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." There appears to be no meaningful difference between the scope of discovery approved in *Armendariz* and that authorized by the AAA employment dispute rules, certainly not the role of the arbitrator in controlling the extent of actual discovery permitted.[3]

■ Equally unfounded is Roman's contention that, by requiring her to arbitrate "all disputes" not resolved internally, the agreement prevents her from asserting administrative claims with the DFEH and the California Labor Commissioner. Although Roman correctly observes an arbitration agreement may not limit rights and remedies available to employees under FEHA (see *Armendariz, supra,* 24 Cal.4th at p. 101 ["it is evident that an arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA"]), Roman is not prohibited under the agreement from filing administrative claims with the DFEH or other state agency, nor is any state agency prevented from carrying out its statutory functions by an arbitration agreement to which it is not a party. (See, e.g., *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 28 [114 L.Ed.2d 26, 111 S.Ct. 1647] [employment arbitration agreement does not preclude employee's complaint to the United States Equal Employment Opportunity Commission even though the claimant, subject to an arbitration agreement, is not able to institute a private judicial action]; accord, *Armendariz,* at p. 99, fn. 6.)

    d.   *The agreement's cost-splitting provisions do not make it unenforceable*

■ The arbitration agreement itself does not mention costs. However, in 1997 at the time the agreement was signed, the AAA rules, incorporated by

---

[3] Pursuant to Code of Civil Procedure, section 1283.1, the full panoply of discovery provided in Code of Civil Procedure section 1283.05 is "conclusively deemed to be incorporated into" an agreement to arbitrate if the dispute arises "out of . . . any injury to, or death of, a person caused by the wrongful act or neglect of another." The *Armendariz* court strongly suggested, but did not decide, a FEHA discrimination claim is properly considered an " 'injury to . . . a person' " within the meaning of this provision. (See *Armendariz, supra,* 24 Cal.4th at p. 105; see also *Bihun v. AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976, 1005 [16 Cal.Rptr.2d 787], disapproved on other grounds in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 664 [25 Cal.Rptr.2d 109, 863 P.2d 179] [FEHA sexual harassment claim is a claim to recover for personal injuries under Civ. Code, § 3291].)

reference into the agreement, provided the costs of the arbitration would be divided equally among the parties. Roman contends this cost-splitting provision, including the allocation of costs for the use of an arbitrator, unfairly burdens the employee with costs unique to the arbitration process and, for that reason, is substantively unconscionable. (See *Armendariz, supra*, 24 Cal.4th at pp. 110–111 ["when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court" (italics omitted)].)

Flo-Kem discounts this issue, emphasizing the 1997 AAA rules expressly provided the AAA rules actually in effect at the time of the demand for arbitration would govern the proceedings; and in 2007, when Flo-Kem demanded arbitration, the AAA rules imposed on the employer the obligation to pay all costs unique to the arbitration. Roman, for her part, counters the 2007 AAA rules are immaterial because the question of unconscionability is determined as of the time an agreement is executed (Civ. Code, § 1670.5, subd. (a); *O'Hare, supra*, 107 Cal.App.4th at p. 281) and, at that time, the agreement (through the 1997 AAA rules) allocated equally to all parties the costs of the arbitration.

■ Although the parties identify an interesting issue, evocative of choice-of-law debates involving the proper application of the reverse renvoi doctrine, it is of little consequence here. Even if the 1997 AAA cost provisions govern and the cost-splitting provision is, therefore, unconscionable, it would not provide a basis to void the arbitration agreement. Civil Code section 1670.5, subdivision (a), provides, "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." "Comment 2 of the Legislative Committee comment on section 1670.5, incorporating the comments from the Uniform Commercial Code, states: 'Under this section the court, in its discretion, may refuse to enforce the contract as a whole if it is permeated by the unconscionability, or it may strike any single clause or group of clauses which are so tainted or which are contrary to the essential purpose of the agreement, or it may simply limit unconscionable clauses so as to avoid unconscionable results.' " (*Armendariz, supra*, 24 Cal.4th at p. 122.) In determining whether to sever or restrict illegal terms rather than voiding the entire contract, "[t]he overarching inquiry is whether ' "the interests of justice . . . would be furthered" ' by severance." (*Id.* at p. 124.) Significantly, the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement: Although "the statute appears to give a trial court some discretion as to

whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement[,] . . . it also appears to contemplate the latter course only when an agreement is 'permeated' by unconscionability." (*Id.* at p. 122.)

■ In *Armendariz, supra,* 24 Cal.4th 83 the court found two factors weighed against severance of the unlawful provisions. First, the arbitration provision contained "more than one unlawful provision," suggesting a "systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Id.* at pp. 124–125.) Second, the agreement's lack of mutuality permeated the entire agreement, requiring not just severance of the provision, but a reformation and augmentation of the agreement. (*Ibid.*) Neither factor is present here. Accordingly, we have little difficulty concluding the interests of justice would be furthered by severance of the cost provision, which, if unconscionable (that is, if the 1997 AAA rules apply), is plainly "collateral to the main purpose of the contract." (*Armendariz,* at p. 124.) Once that provision is severed from the agreement, the costs of the arbitration are properly imposed on Flo-Kem. (See *id.* at p. 113 ["a mandatory employment arbitration agreement that contains within its scope the arbitration of FEHA claims impliedly obliges the employer to pay all types of costs that are unique to arbitration"].)

### 4. *Roman's Waiver Argument Lacks Merit*

■ A petition to compel arbitration will be denied when the right has been waived by the proponent's failure to properly and timely assert it. (*Guess?, Inc. v. Superior Court, supra,* 79 Cal.App.4th at p. 557.) Courts consider a number of factors when assessing a waiver claim: " ' "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' " (*St. Agnes, supra,* 31 Cal.4th at p. 1196.)

Roman contends Flo-Kem engaged in conduct inconsistent with arbitration: Not only did Flo-Kem, without mentioning arbitration, file a demurrer and serve objections to discovery requests, but also, a few weeks after it filed its motion to compel arbitration, Flo-Kem served and filed a motion in superior

court to compel Roman's deposition, asserting in that motion it intended to "file a motion for summary judgment immediately upon gathering the story underlying Plaintiff's claims." Roman insists Flo-Kem's conduct prejudiced her, forcing her to both bring and oppose motions that would not have been necessary had Flo-Kem sought arbitration in a timely fashion.

Although Roman's argument may be superficially appealing, the facts she presents are not sufficiently compelling to demonstrate a waiver. (*St. Agnes, supra,* 31 Cal.4th at p. 1195 ["waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof"].) Flo-Kem filed its notice of petition to compel arbitration a little more than two months after Roman filed her complaint. At the time, no substantive discovery responses had been served by either side, and no formal hearings had taken place on the discovery issues. Moreover, the discovery requests Flo-Kem served (a set of form interrogatories and a request for production of documents) were authorized under the AAA rules; thus the discovery sought (although not received) did not seek to take advantage of discovery tools unavailable in arbitration. (Cf. *Guess?, Inc. v. Superior Court, supra,* 79 Cal.App.4th at p. 558 [waiver found where moving party participated in discovery, taking "full advantage of the opportunity to test the validity of Guess's claims, both legally and factually" before seeking arbitration].)

Although Roman incurred litigation expenses in serving and filing objections to discovery requests and opposing the demurrer and motion to compel her deposition, those expenses are insufficient, by themselves, to support a finding of waiver: " ' "[W]aiver does not occur by mere participation in litigation" ' if there has been no judicial litigation of the merits of arbitrable issues" and no prejudice. (*St. Agnes, supra,* 31 Cal.4th at p. 1203.) "Because merely participating in litigation, by itself, does not result in a waiver, courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses." (*Ibid.*; see also *Groom v. Health Net* (2000) 82 Cal.App.4th 1189, 1197 [98 Cal.Rptr.2d 836] [expense of responding to motions or other preliminary pleadings is not type of prejudice that bars later petition to compel arbitration].) The trial court did not err in impliedly rejecting Roman's waiver argument.[4]

---

[4] Although the trial court did not address the waiver argument in its written order compelling arbitration, we may infer its implied rejection of that argument. (See *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134 [275 Cal.Rptr. 797, 800 P.2d 1227] [a judgment or order of lower court is presumed to be correct on appeal and appellate court will infer trial court made implied factual findings to support judgment].)

## DISPOSITION

The petition for a writ of mandate is denied. Flo-Kem is to recover its costs in this original proceeding.

Woods, J., and Zelon, J., concurred.

Petitioner's petition for review by the Supreme Court was denied July 29, 2009, S173177. George, C. J., and Corrigan, J., did not participate therein.