Filed 6/27/23  Herrera v. Behavioral Systems Southwest CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ARACELI HERRERA, | |
| Plaintiff and Respondent, | G061702 |
| v. | (Super. Ct. No. 30-2022-01243365) |
| BEHAVIORAL SYSTEMS SOUTHWEST, INC., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Randall J. Sherman, Judge.  Affirmed.  Motion to Take Additional Evidence.  Denied.

Workwise Law, George P. Albutt and Renee N. Noy, for Defendant and Appellant.

Lawyers for Justice, Edwin Aiwazian, Arby Aiwazian, Elizabeth M. Parker-Fawley and Won Christina Chang, for Plaintiff and Respondent.

\*          \*          \*

After Araceli Herrera filed a class action complaint against her former employer Behavioral Systems Southwest, Inc. (BSS or appellant), BSS filed a motion to compel arbitration on an individual basis.  The trial court denied the motion, after determining the arbitration agreement was unconscionable because it was a contract of adhesion and lacked mutuality.  On appeal, BSS contends the court erred in determining the agreement lacked mutuality.  As discussed below, we conclude there was a lack of mutuality, and accordingly, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Motion to Compel Arbitration*

On January 28, 2022, Herrera filed a class action complaint for restitution, alleging a single cause of action for violation of the Business and Professions Code section 17200 *et seq*.  The complaint did not reference any arbitration agreement.

On May 3, 2022, BSS filed its motion to compel arbitration on an individual basis, to dismiss the class claims, and to stay the action (Arbitration Motion).  In the motion, BSS alleged that its Employee Handbook contained a mandatory arbitration agreement.  On June 26, 2017, Herrera signed a statement affirming she had "'read the rules and regulations set forth in the BSS Employee Handbook,'" and "'agreed to abide by these rules during [her] employment.'"  BSS further alleged that after her first week of training, on July 3, 2017, Herrera signed the arbitration agreement in the handbook.  Three weeks later, on July 26, 2017, Herrera signed another statement again affirming she had read and agreed to the rules in the handbook.

The arbitration agreement which Herrera purportedly signed on July 3, 2017, was attached in a supporting declaration.  The three-page document, which appears to be an excerpt from the Employee Handbook covering pages 85 through 87, states on the first page that "Signed acknowledgement of the following conditions is required for employment with BSS."  Twelve conditions are then listed over the following three

2

pages, and the last condition is headlined in boldfaced text "Binding Arbitration." The arbitration agreement then states as follows:

"I agree to Binding Arbitration in accordance with the arbitration rules of the American Arbitration Association for all claims, actions, disputes and other matters in question arising out of my employment with BSS, including but not limited to, claims or actions for discrimination, sexual harassment, wages, benefits, wrongful termination, and defamation.

"Any decision by an arbitrator shall be final, binding, and non-appealable and the arbitrator [*sic*] shall be enforceable as any judgment may be rendered upon it in accordance with applicable law of any court having jurisdiction.

"This mandatory arbitration agreement applies to the permissible extend [*sic*] of the law and is not intended to compel arbitration where it is unlawful."

Underneath the arbitration agreement is an acknowledgment statement. Immediately under the acknowledgement are the signatures of the employee and a witness.

B. *Opposition to Arbitration Motion*

Herrera opposed the Arbitration Motion, arguing that BSS failed to meet its burden of proving the existence of an agreement to arbitrate, and that the purported arbitration agreement was unconscionable and cannot be enforced. Herrera disputed BSS's allegation that she signed the arbitration agreement and stated she does not recall signing it.

Herrera also argued the arbitration agreement was procedurally and substantively unconscionable. Specifically, there was a high degree of procedural unconscionability because it was a contract of adhesion, the arbitration agreement was "in a packet of documents at least 99 pages long," and the referenced arbitration rules were not attached. There was substantive unconscionability because of the lack of

3

mutuality. Specifically, the "I agree" language binds only Herrera to the arbitration, not appellant.

In a supporting declaration, Herrera stated she was "surprised" to learn appellant was claiming she had signed an agreement to arbitrate claims. Herrera further stated that when she was hired, "the person providing the [new hire] paperwork to me did not explain the paperwork and required that the signed paperwork be returned as soon as possible. . . . The content of the document was not presented to me as a document that I could review in my own time, or that I could discuss with an attorney. I could not negotiate or change the terms or language contained in the document. I also was not given a copy of any arbitration rules at that time."

C. *Reply*

In reply, BSS asserted that it had proved the existence of an arbitration agreement because Herrera's sworn declaration merely stated she was surprised to learn she had signed an arbitration agreement, not that she did not recall signing it. Additionally, BSS argued the attached declaration of Shaney Gray sufficiently showed, by a preponderance of evidence, that Herrera signed the arbitration agreement. Gray was the person who signed as a witness on the arbitration agreement. In Gray's declaration, she attested that she was "personally familiar with Plaintiff's signature." She further stated that on July 3, 2017, "[o]n being provided with [the arbitration agreement] initialed and signed by Plaintiff, I in turn signed and dated it that same day."

BSS also argued the arbitration agreement was not unconscionable. Acknowledging the adhesive nature of the contract, BSS contended the procedural unconscionability was minimal. However, BSS argued there was no substantive unconscionability. Relying on *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462 (*Roma*n), BSS argued the "I agree" language did not establish the lack of mutuality because the "all . . . disputes" language binds both BSS and Herrera to arbitration.

4

E. *Order Denying Arbitration Motion*

On July 22, 2022, the trial court denied the Arbitration Motion. It found that "Defendant [BSS] has shown the existence of an arbitration agreement signed by plaintiff [Herrera], but not by defendant." The court explained: "On June 26, 2017, plaintiff signed a statement affirming that she had 'read the rules and regulations set forth in the BSS Employee Handbook' and agreed to 'abide by these rules during my employment'. (However, defendant did not provide the court with the actual handbook that allegedly contains the arbitration agreement to show that plaintiff in fact received the arbitration agreement on June 26, 2017.) On July 3, 2017, after plaintiff's week of training, plaintiff signed the arbitration agreement in the employee handbook. Around July 26, 2017, plaintiff signed another statement, again affirming that she had read the rules in the employee handbook and that she agreed to abide by them. (However, this statement does not reference any arbitration agreement, but only the employee handbook which was not provided as evidence.)"

The trial court, however, concluded that the arbitration agreement was unenforceable because it was unconscionable. It found "[p]rocedural unconscionability is present here based on the arbitration agreement being a contract of adhesion." It found substantive unconscionability based on lack of mutuality. The court determined that "Defendant has not shown that it agreed to arbitrate any or all disputes with plaintiff, but only that plaintiff so agreed." The court distinguished *Roman*, *supra*, 172 Cal.App.4th 1462, based on the differing language in the respective arbitration agreements and the fact that the instant arbitration agreement was "on page 87 of a document package."

II

DISCUSSION

A. A*pplicable Law*

Code of Civil Procedure section 1281.2 requires the trial court to order arbitration of a controversy "[o]n petition of a party to an arbitration agreement alleging

5

the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy . . . if it determines that an agreement to arbitrate the controversy exists." "The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*).) "Absent conflicting evidence, we review de novo the trial court's interpretation of an arbitration agreement, including the determination whether it is enforceable on unconscionability grounds." (*Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1120.) "Where the court's ruling is based on a finding of fact, we review the decision for substantial evidence. [Citations.] Under this deferential standard, "'[a]ll factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment.'" [Citations.]" (*Id.* at p. 1121.)

B. *The Trial Court Did Not Err in Finding Appellant Established the Existence of An Arbitration Agreement*

The trial court found that appellant had shown the existence of an arbitration agreement signed by respondent, but not by appellant. Herrera interprets the court's finding to mean that appellant failed to meet its threshold burden of proving the existence of an arbitration agreement between the parties. We disagree because we read the court's finding to mean that appellant had met its initial burden to improve the existence of an arbitration agreement. In any event, an arbitration agreement generally is enforceable against a signatory, even if not signed by the party seeking arbitration. (See *Serafin v. Balco Properties* (2015) 235 Cal.App.4th 165, 176 ["the writing memorializing an arbitration agreement need not be signed by both parties in order to be upheld as a binding arbitration agreement"]; see also *Pinnacle*, *supra*, 55 Cal.4th at p. 236 ["A signed [arbitration] agreement is not necessary, however, and a party's acceptance may be implied in fact [citation] or be effectuated by delegated consent [citation]."].)

6

C. *The Trial Court Did Not Err In Determining Respondent Proved The Arbitration Agreement Was Unconscionable*

Herrera has the burden of proving unconscionability. "Unconscionability consists of both procedural and substantive elements. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." (*Pinnacle*, *supra*, 55 Cal.4th at p. 246.) "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." (*Ibid*.) An example of substantive unconscionability is lack of mutuality, without at least some reasonable justification for such one-sidedness based on "business realities." (*Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83, 117.) "Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on "'a sliding scale. '" [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.]" (*Pinnacle* at p. 247.)

Appellant does not challenge the trial court's determination that there was procedural unconscionability because of the adhesive nature of the arbitration agreement. Given that "the paramount consideration in assessing conscionability is mutuality," (*Abramson v. Juniper Networks, Inc*. (2004) 115 Cal.App.4th 638, 657), even if the degree of procedural unconscionability is low, the lack of mutuality would still render the arbitration agreement unenforceable. We thus turn to whether the arbitration agreement lacked mutuality. Because the court did not rely on extrinsic evidence to determine lack of mutuality, we review de novo the court's determination.

As noted above, the arbitration agreement provides: "I agree to Binding Arbitration in accordance with the arbitration rules of the American Arbitration Association for all claims, actions, disputes and other matters in question arising out of

7

my employment with BSS, including but not limited to, claims or actions for discrimination, sexual harassment, wages, benefits, wrongful termination., and defamation. [¶] Any decision by an arbitrator shall be final, binding, and non-appealable and the arbitrator [*sic*] shall be enforceable as any judgment may be rendered upon it in accordance with applicable law of any court having jurisdiction. [¶] This mandatory arbitration agreement applies to the permissible extend [*sic*] of the law and is not intended to compel arbitration where it is unlawful."

In *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238 (*Higgins*), the appellate court determined that similar language evidenced lack of mutuality. There, the arbitration agreement provided: "'I agree that any and all disputes or controversies arising under this Agreement or any of its terms, any effort by any party to enforce, interpret, construe, rescind, terminate or annul this Agreement, or any provision thereof, and any and all disputes or controversies relating to my appearance or participation in the Program, shall be resolved by binding arbitration in accordance with the following procedure. . . . All arbitration proceedings shall be conducted under the auspices of the American Arbitration Association. . . . I agree that the arbitrator's ruling, or arbitrators' ruling, as applicable, shall be final and binding and not subject to appeal or challenge. . . . The parties hereto agree that, notwithstanding the provisions of this paragraph, Producer shall have a right to injunctive or other equitable relief as provided for in California Code of Civil Procedure [section] 1281.8 or other relevant laws.'" (*Id.* at p. 1243.)

The *Higgins* court concluded the arbitration agreement lacked mutuality because "the arbitration provision requires only petitioners to submit their claims to arbitration. The clause repeatedly includes 'I agree' language, with the 'I' being a reference to the 'applicant' (i.e., each of the petitioners). The only time the phrase 'the parties' is used is in the last sentence, where 'the parties' agree that, notwithstanding the arbitration provision, the producer has the right to seek injunctive or other equitable relief in a court of law as provided for in Code of Civil Procedure section 1281.1 or other

8

relevant laws." (*Higgins, supra*, 140 Cal.App.4th at p. 1253.)  Similarly, here, the arbitration agreement uses the "I agree" phrase, with the "I" referring to Herrera.  Thus, on its face the arbitration agreement binds only Herrera.

Appellant contends *Higgins*, *supra*, 104 Cal.App.4th 1238, is an "outlier," citing numerous cases that have found mutuality despite the use of the phrase "I agree." (See, e.g., *Nguyen v. Applied Medical Resources Corp*. (2016) 4 Cal.App.5th 232 (*Nguyen*); *Roman*, *supra*, 172 Cal.App.4th 1462.)  The holdings in these cases and in *Higgins* can be harmonized.  *Serpa v. California Surety Investigations, Inc*. (2013) 215 Cal.App.4th 695 (*Serpa*), issued by the same appellate court that decided *Roman* is illustrative.

In *Serpa*, the employee signed a separate arbitration agreement that provided:  "'I understand and agree that if my employment is terminated or my employment status is otherwise changed or if any other dispute arises concerning my employment and The Company and I cannot resolve such dispute through informal internal efforts, I will submit any such dispute (including, but not limited to wage and hour claims, claims of unlawful discrimination based on race, sex, age, national origin, disability or any other basis prohibited by law, but excluding claims which are required by law to be resolved solely by a public agency, such as claims relating to workers' compensation or unemployment insurance) exclusively to binding arbitration before a retired judge.  I further agree to abide by the procedures in The Company's Arbitration Policy.  I have received a copy of the Arbitration Policy that is located in the employee handbook.'"  (*Id.* at p. 699.)  The employee handbook contained the following relevant provision:  "If your employment is terminated or your employment status is otherwise changed and you believe that your rights were violated or if any other dispute arises concerning your employment which you and the Company cannot resolve informally and internally, you and the Company agree to submit the dispute (including, but not limited to wage and hour claims and, claims of unlawful discrimination based on race, sex, age,

national origin, disability or any other basis prohibited by law), exclusively to binding arbitration before a retired judge. This Arbitration Policy specifically excludes only those claims that are required by law to be heard solely by a public agency such as worker's compensation. . . . [¶] . . . [¶]" (*Id.* at pp. 699–700.)

In response to the employee's argument that the arbitration agreement lacked mutuality based on the language in the separate arbitration agreement, the appellate court stated: "Were that the full extent of the agreement, we would likely agree it lacked mutuality because it requires Serpa to submit to arbitration 'any such dispute[s]' involving her employment without imposing a similar obligation on CSI. [Citations.] In this way, this document, at least on its face, is far different from that in *Roman*, *supra*, 172 Cal.App.4th 1462, in which we held the words 'I agree' did not vitiate an otherwise bilateral obligation to arbitrate 'all disputes and claims that might arise out of my employment.'" (*Serpa*, *supra*, 215 Cal.App.4th at p. 705.) "However, . . . , the agreement's incorporation of the arbitration policy in the employee handbook [citations] salvages the agreement by establishing an unmistakable mutual obligation on the part of CSI and Serpa to arbitrate 'any dispute' arising out of her employment." (*Ibid.*) As noted above, the employee handbook provided that "you and the Company agree to submit the dispute . . . to binding arbitration. . . ." (*Id.* at p. 700.)

Similarly, in *Nguyen*, *supra*, 4 Cal.App.5th 232, because the arbitration agreement contained language showing mutuality, the use of the "I agree" language did not destroy the otherwise bilateral agreement. There, the arbitration agreement provided: "'I hereby agree to submit to binding arbitration all disputes and claims arising out of or relating to the submission of this application. I further agree, in the event that I am hired by the company, that all disputes that cannot be resolved by informal internal resolution which might arise out of or relate to my employment with the company, whether during or after that employment, will be submitted to binding arbitration. I agree that such arbitration shall be conducted under the rules of the [AAA]. This application contains the

entire agreement between the parties with regard to dispute resolution, and there are no other agreements as to dispute resolution, either oral or written.  However, *the company and I shall each pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses*.  The prevailing party shall be entitled to recover reasonable attorneys fees, costs, and expenses.  The arbitration shall be held in Orange County, California.  It shall be governed by California law without regard to California choice-of-law statutes, rules and cases.'"  (*Id*. at p. 241, italics added.)

Like *Serpa* and *Nguyen*, the arbitration agreement in *Fuentes v. Empire Nissan, Inc.* (2023) 90 Cal.App.5th 919 (*Fuentes*), issued while this appeal was pending and which appellant discussed in a supplemental briefing and at oral argument, contains language showing a bilateral agreement.  There the arbitration agreement provided in relevant part: "'"Because of the mutual benefits . . . which private binding arbitration can provide both the Company and myself, *I and the Company both agree* that any claim, dispute, and/or controversy that either party may have against one another . . . which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company . . . arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, . . . shall be submitted to and determined exclusively by binding arbitration."'[Citation]"  (*Fuentes*, 90 Cal.App.5th at pp. 515 & 520; see also *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1241 & 1249 [finding bilateral agreement where arbitration agreement provided that the parties "'mutually agree'" to arbitrate "'any claim or action arising out of or in any way related to the hire, employment, remuneration, separation or termination of Employee.'"].)

Finally, in *Roman*, the arbitration agreement stated that, "This application contains the entire agreement *between the parties with regard to dispute resolution*, and there are no other agreements as to dispute resolution, either oral or written." (*Roman*, *supra*, 172 Cal.App.4th at p. 1467.) Although not explicit like the bilateral language in other arbitration agreements described above, this language indicates there were mutual obligations concerning dispute resolution imposed on all parties. During oral argument, appellant discounted the import of this language, noting that all agreements are between parties. However, the inclusion of this otherwise superfluous language ("agreement between the parties") indicates something other than the mere existence of an agreement between the parties, perhaps, as stated above, that there were bilateral obligations. The ambiguity in the inclusion of the language would allow a court to find a bilateral agreement, as the *Roman* court did. (*See id.* at p. 1473 ["Even if the language in the . . . arbitration provision were somehow ambiguous on this point, given the public policy favoring arbitration [citation] and the requirement we interpret the provision in a manner that renders it legal rather than void [citations], we would necessarily construe the arbitration agreement as imposing a valid, mutual obligation to arbitrate."].)[1]

Here, the "I agree" language, which applies only to Herrera, shows lack of mutuality. There is no other evidence in the record that suggests otherwise. For example, there is no provision that stated Herrera *and* BSS agreed or that the parties "mutually agree" to submit their claims to arbitration. Nor is there any language referencing BSS in connection with arbitration, such as the procedure for initiating arbitration or the paying of arbitral costs. Finally, there is no language that the agreement

---

[1]    Appellant also cited *Bigler v. Harker School* (2013) 213 Cal.App.4th 727 (*Bigler*), as a case that disagreed with the holding of *Higgins*. *Bigler*, however, never mentions *Higgins*. Moreover, its discussion of mutuality and the "I agree" language is both cursory and conclusory. (See *Bigler*, *supra*, 213 Cal.App.4th at p. 738.) *Bigler* thus does not persuade us that the arbitration agreement here was bilateral.

12

was between the parties.  In sum, the trial court did not err in determining that the arbitration lacked mutuality and denying the arbitration motion.[2]


## III

### DISPOSITION

The order of the trial court denying the motion to compel arbitration is affirmed.  Herrera may recover her costs on appeal.



DELANEY, J.


WE CONCUR:



SANCHEZ, Acting P. J.



MOTOIKE, J.

---

[2]     We deny appellant's Motion to Take Additional Evidence, which requests that this court consider the entire BSS handbook.  The motion is premised on the ground that the consideration of the entire handbook is necessary to address Herrera's new argument on appeal that the arbitration agreement lacked mutuality because the term "BSS" in the agreement is not defined.  We reject Herrera's argument because it is undisputed that the Employee Handbook is referenced as the "BSS Employee Handbook" in the trial court's ruling without objection, and the only reasonable inference is that BSS refers to appellant.  Because we reject respondent's argument, we need not consider the entire Employee Handbook.  Additionally, our conclusion that there is a lack of mutuality does not depend on whether "BSS" is defined in the arbitration agreement.  Accordingly, the entire Employee Handbook is not materially relevant to our ruling.