Filed 10/4/16  Certified for Publication 10/14/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

DA LOC NGUYEN,

    Plaintiff and Appellant,

        v.

APPLIED MEDICAL RESOURCES
CORPORATION,

    Defendant and Respondent.

G052207

(Super. Ct. No. 30-2014-00748050)

O P I N I O N

\*         \*         \*

        Appeal from an order of the Superior Court of Orange County, Robert J. Moss, Judge.  Appeal treated as a petition for writ of mandate.  Petition granted in part and denied in part.  Request for judicial notice granted.

        Quintilone & Associates and Richard E. Quintilone II; Law Offices of John D. Trieu and John D. Trieu for Plaintiff and Appellant.

        Jones Day, Steven M. Zadravecz and Edward S. Chang for Defendant and Respondent.

Plaintiff Da Loc Nguyen appeals from the trial court's order granting the motion of his former employer, defendant Applied Medical Resources Corporation, to compel arbitration based on an arbitration clause contained in his employment application. The court ordered plaintiff to submit his individual claims to arbitration and struck all class and representative claims except for the representative Private Attorney General Act (PAGA)[1] cause of action.

Plaintiff contends the order is immediately appealable based on the death knell doctrine, which makes an order terminating class allegations but allowing individual claims to continue immediately appealable. He argues *Munoz v. Chipotle Mexican Grill, Inc.* (2015) 238 Cal.App.4th 291 (*Munoz*), which held that the death knell doctrine is inapplicable where a PAGA cause of action remains, was wrongly decided and should not be followed. We disagree but nevertheless treat the appeal as a petition for writ of mandate.

As to the merits of the appeal, plaintiff asserts the court erred in finding the arbitration clause was not unconscionable, severing the cost provision, and dismissing the class claims with prejudice. We reject all but the last argument. Based on the recent case of *Sandquist v. Lebo Automotive Inc.* (2016) 1 Cal.5th 233 (*Sandquist*), on which we have received supplemental briefing from the parties, the trial court erred in dismissing the class claims because whether the arbitration provision contemplated class arbitration was a question for the arbitrator to decide.

We shall issue a peremptory writ of mandate commanding the trial court to vacate that portion of its order dismissing the class claims to allow the arbitrator to decide

---

[1] "Under PAGA, 'an "aggrieved employee" may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations. [Citation.] Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the "aggrieved employees."'" (*Miranda v. Anderson Enterprises, Inc.* (2015) 241 Cal.App.4th 196, 199, fn. 1 (*Miranda*).)

whether the arbitration clause permits arbitration on a class-wide basis. In all other respects, the peremptory writ challenging the order compelling arbitration is denied. We grant plaintiff's request for judicial notice of the American Arbitration Association's (AAA) Employment Arbitration Rules and Mediation Procedures, amended and effective June 1, 2009, Employment Arbitration Rules and Mediation Procedures, amended and effective November 1, 2009, and Supplemental Rules for Class Arbitrations.

I

FACTS AND PROCEDURAL BACKGROUND

Defendant manufactures surgical products and sells or distributes them nationwide. After plaintiff completed a job application, defendant hired him to work in the production line of its surgical products.

The application consisted of five pages. The first three pages asked for general information such as address, phone number, education and work history. The last two pages instructed the applicant in all capital letters to "PLEASE READ CAREFULLY, INITIAL EACH [OF FOUR] PARAGRAPH[S] AND SIGN BELOW." Plaintiff signed the application after initialing all four of the paragraphs, including the third one, which states: "I hereby agree to submit to binding arbitration all disputes and claims arising out of or relating to the submission of this application. I further agree, in the event that I am hired by the company, that all disputes that cannot be resolved by informal internal resolution which might arise out of or relate to my employment with the company, whether during or after that employment, will be submitted to binding arbitration. I agree that such arbitration shall be conducted under the rules of the [AAA]. This application contains the entire agreement between the parties with regard to dispute resolution, and there are no other agreements as to dispute resolution, either oral or written. However, the company and I shall each pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses.

3

The prevailing party shall be entitled to recover reasonable attorneys fees, costs, and expenses. The arbitration shall be held in Orange County, California. It shall be governed by California law without regard to California choice-of-law statutes, rules and cases."

In 2014, plaintiff brought a putative class action against defendant, asserting causes of action under the Labor Code, the Unlawful Competition Law, and PAGA. The action sought unpaid overtime, meal and rest period compensation, penalties, plus injunctive and other equitable relief.

Counsel for both parties met on multiple occasions to discuss a potential stipulation to submit the claims to arbitration and stay the PAGA cause of action. Defendant offered to pay for the costs of arbitration, including the initiation fees and compensation for the arbitrator, effectively agreeing to strike the cost splitting provision. Plaintiff rejected it.

Defendant moved to compel arbitration of the individual claims, strike the class allegations, and stay the PAGA cause of action. Plaintiff opposed the motion.

The trial court granted the motion, ordering plaintiff's individual claims to arbitration, striking or dismissing the class action allegations with prejudice, and directed defendant to "pay all costs of the arbitration other than those that plaintiff would necessarily pay in a court proceeding." In doing so, it found: (1) the contract was still a contract even if it may be one of adhesion because plaintiff was required to sign it in order to obtain employment; (2) plaintiff was not credible in claiming he was "not fluent in speaking or reading English," as he states in his application "he has English as a special skill or talent[,] . . . checked the appropriate boxes on the application which require such an understanding, and . . . is a civil engineer trained in Australia"; (3) the failure to attach or provide the AAA rules "may make the application procedurally unconscionable" but not "substantial[ly] oppressive[] . . . [as i]t would seem unlikely that a civil engineer, with six years of college, could not traverse the internet to find such

4

rules[ a]nd, even if the application is procedurally unconscionable, it is not substantively unconscionable"; (4) the costs provision was "easily severable" and did "not permeate the application with substantive unconscionablity"; and (5) nothing in the arbitration provision indicated "class actions or representative claims were included" and the words used did not relate or arise out of other employees' employment.

## II

## DISCUSSION

### A. *Appealability*

"An order compelling arbitration is not appealable." (*Garcia v. Superior Court* (2015) 236 Cal.App.4th 1138, 1149.) Although "[r]eview of [such] an order . . . ordinarily must await appeal from a final judgment entered after arbitration[,] . . . [¶] . . . when warranted by the circumstances, immediate review of an order granting a motion to compel arbitration may be obtained by a petition for writ of mandate." (*Ibid.*) Where appropriate, it is also attainable under the death knell doctrine, which "'provides that an order which allows a plaintiff to pursue individual claims, but prevents the plaintiff from maintaining the claims as a class action, . . . is immediately appealable because it "effectively r[ings] the death knell for the class claims."'" [Citations.] Appealability under the death knell doctrine requires 'an order that (1) amounts to a de facto final judgment for absent plaintiffs, under circumstances where (2) the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no *formal* final judgment will ever be entered.'" (*Miranda*, *supra*, 241 Cal.App.4th at p. 200.)

The death knell doctrine does not apply in this case. "[O]rders that only limit the scope of a class or the number of claims available to it are not similarly tantamount to dismissal and do not qualify for immediate appeal under the death knell doctrine; only an order that *entirely terminates* class claims is appealable." (*In re Baycol*

5

*Cases I & II* (2011) 51 Cal.4th 751, 757-758, italics added (*Baycol*).) "Although the only class claim has been dismissed, the representative PAGA claim remains and plaintiff does not contend there are any putative class members who are not also aggrieved employees for purposes of the PAGA claim. Accordingly, the order does not appear to constitute a de facto final judgment for absent plaintiffs—the putative class members/aggrieved employees under PAGA—because their PAGA claims remain pending." (*Young v. Remx, Inc.* (2016) 2 Cal.App.5th 630, 635 (*Young*).) That distinguishes this case from *Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1282, cited by plaintiff in his reply brief, where the order compelling arbitration terminated all class claims, "effectively limiting the arbitration to [the] plaintiff's claims." (Italics omitted.)

"In any event, because of the remaining PAGA claim, plaintiff has not established the second rationale for the death knell doctrine: that '"the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no formal final judgment will ever be entered."'" (*Young*, *supra*, 2 Cal.App.5th at p. 635.) *Young* found *Munoz* instructive on this issue. In *Munoz*, the plaintiff appealed from an order denying class certification under the death knell doctrine. (*Munoz*, *supra*, 238 Cal.App.4th at p. 294.) *Munoz* dismissed the appeal, concluding the potential PAGA penalties incentivized the plaintiff to continue with the litigation, thus eliminating any death knell effect. (*Id*. at pp. 294, 309.) "Given the potential for recovery of significant civil penalties if the PAGA claims are successful, as well as attorney fees and costs, plaintiffs have ample financial incentive to pursue the remaining representative claims under the PAGA and, thereafter, pursue their appeal from the trial court's order denying class certification. Denial of class certification where the PAGA claims remain in the trial court would not have the 'legal effect' of a final judgment . . . ." (*Munoz*, at p. 311; accord, *Young,* at p. 635.)

6

Plaintiff contends *Munoz* was "wrongly decided" and should not be followed. We disagree.

Contrary to plaintiff's claim, *Munoz* did not set forth a "financial incentive" rule that conflicts with *Baycol*. As *Young* explained, "[t]he focus of the death knell doctrine is whether plaintiff has a sufficient incentive to proceed and here, as in *Munoz*, the PAGA claim provides that incentive." (*Young*, *supra*, 2 Cal.App.5th at p. 635.) Plaintiff is correct that *Baycol* stated, "[i]f an order terminates class claims, but individual claims persist, the order terminating class claims is immediately appealable under . . . death knell doctrine." (*Baycol*, *supra*, 51 Cal.4th at p. 762.) But the order here did not "entirely terminate[ all] class claims" as required by *Baycol* for an order to be appealable. (*Id.* at p. 758.) The action remained with respect to the issues related to, and the rights of the putative class members under, the PAGA cause of action, notwithstanding plaintiff's claims to the contrary.

Plaintiff maintains a PAGA claim "belong[s] to the state, not the putative class members," who "should not be required to await the outcome of [plaintiff's] case in order to appeal an order that is final to them" because as to them "the action has terminated." We disagree. "[I]f an employee plaintiff prevails in an action under the act for civil penalties by proving that the employer has committed a Labor Code violation, the defendant employer will be bound by the resulting judgment. Nonparty employees may then, by invoking collateral estoppel, use the judgment against the employer to obtain remedies other than civil penalties for the same Labor Code violations. If the employer had prevailed, however, the nonparty employees, because they were not given notice of the action or afforded any opportunity to be heard, would not be bound by the judgment as to remedies other than civil penalties." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 987.)

Plaintiff's final concern is that the "putative class members must appeal now or forever lose the right to appeal." But *Baycol* rejected such an argument and held

7

the death knell doctrine did not apply where there was no risk that "an individual plaintiff may lack incentive to pursue his individual claims to judgment, thereby foreclosing any possible appellate review of class issues[.]" (*Baycol*, *supra*, 51 Cal.4th at p. 758.)

Plaintiff requests that we treat the appeal as a petition for writ of mandate. "[W]rit review of orders compelling arbitration is proper in at least two circumstances: (1) if the matters ordered arbitrated fall clearly outside the scope of the arbitration agreement or (2) if the arbitration would appear to be unduly time consuming or expensive." (*Zembsch v. Superior Court* (2006) 146 Cal.App.4th 153, 160.) In this case, writ review is proper in order to avoid an arbitration based on erroneous rulings of law, which may result in needless delay and expense.

In *Elijahjuan v. Superior Court* (2012) 210 Cal.App.4th 15 (*Elijahjuan*), the court "conclude[d] that issuance of the writ is warranted in this unusual case. The issue of arbitrability in this case is one of law and has been fully briefed. [Citation.] Additionally, the record is adequate to consider the issues, and there is no indication the trial court would be more than a nominal party. [Citation.] If we were to dismiss the appeal, the ultimate reversal of the order would be inevitable, and would follow the substantial expense of completing an arbitration. [Citations.] To dismiss the appeal and require the parties to proceed to arbitration of nonarbitral claims would be ""unnecessarily dilatory and circuitous.""" (*Id.* at pp. 19–20.)

A similar unusual or exceptional situation exists here in light of *Sandquist*, *supra*, 1 Cal.5th 233, which held that under California contract law, whether an arbitration clause contemplated arbitration of class actions as well as individual claims may be for the arbitrator to decide rather than the trial court depending on the language used. If the arbitration provision in this case required the arbitrator to decide whether the clause included class arbitration, the trial court's error in deciding the issue itself would be reversible per se. But in order to reach that question, it must first be determined the arbitration clause was valid and enforceable. To dismiss the appeal and allow the parties

8

to arbitrate only plaintiff's individual claims merely to have the resulting order vacated in light of *Sandquist* would waste time and resources. Writ review is thus appropriate.

## B. Applicability of the Federal Arbitration Act (FAA)

At the outset, we address defendant's contention the arbitration agreement is governed by the Federal Arbitration Act (FAA). Defendant is correct.

The FAA reflects a "'liberal federal policy favoring arbitration,'" and the "'fundamental principle that arbitration is a matter of contract.'" (*AT & T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339 [131 S.Ct. 1740, 179 L.Ed.2d 742].) Its main purpose "'is to "ensur[e] that private arbitration agreements are enforced according to their terms"'" and it "preempts any state law rule that '"stand[s] as an obstacle to the accomplishment of the FAA's objectives."'" (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 237-238 (*Carbajal*).)

"The FAA applies to any 'contract evidencing a transaction involving commerce' that contains an arbitration provision. [Citations.] '[T]he phrase "'involving commerce'" in the FAA is the functional equivalent of the term "'affecting commerce,'" which is a term of art that ordinarily signals the broadest permissible exercise of Congress's commerce clause power.' [Citations.] . . . [¶] [T]he United States Supreme Court has identified 'three categories of activity that Congress may regulate under the commerce power: (1) the channels of interstate commerce, (2) the instrumentalities of interstate commerce and persons or things in interstate commerce, and (3) those activities having a substantial relation to interstate commerce.' [Citations.] [¶] The party asserting FAA preemption bears the burden to present evidence establishing a contract with the arbitration provision affects one of these three categories of activity, and failure to do so renders the FAA inapplicable." (*Carbajal*, *supra*, 245 Cal.App.4th at p. 238.)

Here, defendant presented the declaration of its in-house counsel, Cynthia Bonner. Bonner attested that defendant designs and manufactures surgical products,

9

which it sells and distributes worldwide, and that plaintiff worked on the production line for those products. Plaintiff presented no contrary evidence and in fact failed to address the issue at all. The uncontroverted evidence thus shows plaintiff's employment with defendant bears on interstate commerce such that it falls within the scope of the FAA.

## C. Unconscionability

Unconscionability "'"'refers to '"an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."'" [Citation.] As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results."'"'" (*Baltazar v. Forever 21, Inc*. (2016) 62 Cal.4th 1237, 1243 (*Balazar*).) "The doctrine applies to arbitration agreements, even those governed by the FAA." (*Carbajal*, *supra*, 245 Cal.App.4th at p. 242.)

"'[T]here are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability . . . . Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. [Citation.] Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced [citation], contain a degree of procedural unconscionability even without any notable surprises, and "bear within them the clear danger of oppression and overreaching." [Citation.]' [Citation.] We have instructed that courts must be 'particularly attuned' to this danger in the employment setting, where 'economic pressure exerted by employers on all but the most sought-after employees may be particularly acute.'" (*Balazar*, *supra*, 62 Cal.App.4th at p. 1244.)

Both procedural and substantive unconscionability must be present for the court to refuse to enforce a contract under the doctrine of unconscionability although

10

"they need not be present in the same degree." (*Baltazar*, *supra*, 62 Cal.4th at p. 1243.) Essentially, the court applies a sliding scale to the determination: "'[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 247 (*Pinnacle*).)

"The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 911-912; see *Baltazar*, *supra*, 62 Cal.4th at p. 1245 ["[c]ommerce depends on the enforceability, in most instances, of a duly executed written contract[;] [a] party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain"].)

The trial court's unconscionability determination, absent conflicting extrinsic evidence, is question of law subject to de novo review. (*Pinnacle*, *supra*, 55 Cal.4th at p. 236.) "'However, where an unconscionability determination "is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence."'" (*Lhotka v. Geographic Expeditions, Inc*. (2010) 181 Cal.App.4th 816, 820-821 (*Lhotka*).) "In keeping with California's strong public policy in favor of arbitration, any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration." (*Ibid*.)

11

*1. Procedural Unconscionability*

Plaintiff contends the arbitration clause was procedurally unconscionable to a "strong degree"[2] because it was an adhesion contract offered on a take-it-or-leave-it basis with no opportunity for negotiation, compounded by the failures to attach the AAA rules or explain either the application or the meaning of the word "arbitration." We disagree.

Defendant acknowledges the arbitration clause "was presented as a 'take-it-or-leave-it' contract of adhesion in the employment context." "The [employment application] and its arbitration provision therefore contain at least some degree of procedural unconscionability . . . ." (*Carbajal*, *supra*, 245 Cal.App.4th at p. 243.) But that alone "establish[es] only a modest degree of procedural unconscionability." (*Id.* at p. 244.)

*Carbajal*, however, determined the level of unconscionability in that case rose "to a moderate level because the Agreement requires Carbajal to arbitrate her claims 'in accordance with the rules of the [AAA]' without identifying which of AAA's nearly 100 different sets of active rules will apply. Before requiring Carbajal to sign the Agreement, CW Painting did not provide Carbajal a copy of the rules it thought would govern, tell her where she could find a copy of the rules, offer to explain the arbitration provision, or give her an opportunity to review any rules." (*Carbajal*, *supra*, 245 Cal.App.4th at p. 244, fn. omitted.) Plaintiff highlights *Carbajal* in his reply brief.

But a month after *Carbajal* was published, our Supreme Court in *Baltazar*, *supra*, 62 Cal.4th 1237, rejected a similar claim. *Baltazar* began by noting that "[t]he

---

[2] According to plaintiff, "the trial court conceded that the arbitration clause was procedurally unconscionable" but failed to determine whether it was a strong or modest showing. That is inaccurate. The court said the failure to attach or otherwise provide the AAA rules "*may* make the application procedurally unconscionable" (italics added), but even if it was, there was no substantive unconscionability. It thus never reached the issue of whether any procedurally unconscionabilty was strong or mild.

12

adhesive nature of the employment contract requires us to be 'particularly attuned' to [the plaintiff's] claim of unconscionability [citation], but we do not subject the contract to the same degree of scrutiny as '[c]ontracts of adhesion that involve surprise or other sharp practices' [citation]." (*Id.* at p. 1245.)  Plaintiff here does not claim he was lied to or otherwise manipulated into signing the application.  (Cf. *ibid.*)

The plaintiff in *Baltazar* "argue[d] that a somewhat greater degree of procedural unconscionability . . . warrant[ed] closer scrutiny of the substantive fairness of the agreement's terms—because Forever 21 did not provide Baltazar with a copy of the AAA's rules for arbitration of employment disputes, which, by the terms of the arbitration agreement, govern any arbitration between the parties.  Baltazar relies on *Trivedi [v. Curexo Technology Corp*. (2010) 189 Cal.App.4th 387, as does the plaintiff in this case], which notes that '[n]umerous cases have held that the failure to provide a copy of the arbitration rules to which the employee would be bound supported a finding of procedural unconscionability.' [Citation.]  But in *Trivedi* itself and in each of the Court of Appeal decisions cited therein, the plaintiff's unconscionability claim depended in some manner on the arbitration rules in question.  [Citations.]  These cases thus stand for the proposition that courts will more closely scrutinize the substantive unconscionability of terms that were 'artfully hidden' by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement. [Citation.]  Baltazar's argument accordingly might have force if her unconscionability challenge concerned some element of the AAA rules of which she had been unaware when she signed the arbitration agreement.  But her challenge to the enforcement of the agreement has nothing to do with the AAA rules; her challenge concerns only matters that were clearly delineated in the agreement she signed.  Forever 21's failure to attach the AAA rules therefore does not affect our consideration of Baltazar's claims of substantive unconscionability." (*Baltazar*, *supra,* 62 Cal.App.4th at p. 1246.)

13

The same applies here. Plaintiff does not claim anything was hidden in the AAA rules. Rather, she contests only matters related to the agreement itself. Therefore, following *Baltazar*, the failure to attach the applicable AAA rules did not increase the procedural unconscionability of the application or its arbitration provision.

Neither did the mere failure to explain the meaning of the word "arbitration." In *Carbajal*, we found the procedural unconscionability had "rise[n] to a moderate level" based on several factors, one of which was that defendant had not "offer[ed] to explain the arbitration provision." (*Carbajal*, *supra*, 245 Cal.App.4th at p. 244.) All the other reasons related to the defendant's conduct in not identifying, providing, informing her where to find, or giving her an opportunity to read, the applicable AAA rules. (*Ibid.*) *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 84-85 (*Carmona*), cited by plaintiff, is similar, finding a moderate degree of procedural unconscionability where the defendant did not provide the applicable AAA rules, an explanation of the meaning of arbitration, or, as to one plaintiff, much time "to review the multipage employment agreement."

As to these cases, *Baltazar* removed the nonprovision or nonattachment of the AAA rules as a basis for increasing the procedural unconscionablity level, leaving only the failure to explain the meaning of arbitration. But "simply because a provision within a contract of adhesion is not read or understood by the nondrafting party does not justify a refusal to enforce it. The unbargained-for term may only be denied enforcement if it is also *substantively* unreasonable." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88.)

In *Carmona*, "[w]hat elevate[d] [that] case to a high degree of procedural unconscionability . . . [wa]s the element of surprise regarding a key clause, the enforceability clause. . . . The car wash companies hid the enforceability clause and the entire confidentiality subagreement by failing to translate that portion of the agreement into Spanish. Esteban and Matute Casco could not read English, yet the car wash

14

companies provided the enforceability clause in English only. The car wash companies evidently knew plaintiffs required Spanish translations because they provided some translation. The record does not reveal why the car wash companies did not translate the entirety of the employment agreement. In sum, with both oppression and surprise present, there is no question the arbitration agreement was procedurally unconscionable." (*Carmona*, *supra*, 226 Cal.App.4th at p. 85.)

Here, in contrast, the trial court specifically found "[p]laintiff's assertion that he is not fluent in speaking or reading English is not credible, as he indicates otherwise in his application, attesting to the fact that he has English as a special skill or talent. He checked the appropriate boxes on the application which require such an understanding, and as he is a civil engineer trained in Australia."

We disregard plaintiff's claims to the contrary because "[w]e must resolve all conflicts in the evidence and draw every reasonable inference to support the trial court's ruling. [Citation.] Because neither side requested a statement of decision, we also must presume the court made all necessary findings supported by substantial evidence." (*Carbajal*, *supra*, 245 Cal.App.4th at p. 244, fn. 3.) The court may have been mistaken in finding plaintiff was a civil engineer, as his application shows he had only an associate's degree and not a bachelor's degree, but that is irrelevant. The point was that plaintiff knew enough English to obtain both an associate's degree and go through four years at a university in Australia, whether or not he had only been in the United States for a few months, with this being his first job.

For the above reasons, we are not persuaded by plaintiff's factual distinctions of this case from *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462 (*Roman*). Here, the degree of procedural unconscionability of the arbitration clause is not "high," as in *Carmona*. Nor does it rise to the level of "moderate" given that the failure to explain the meaning of arbitration was only one out of several factors considered by

15

both *Carbajal* and *Carmona*.[3] That leaves the degree of procedural unconscionability of the arbitration clause at "modest." (See *Carbajal*, *supra*, 245 Cal.App.4th at p. 244.)

### 2. *Substantive Unconscionability*

Plaintiff argues the arbitration clause is substantively unconscionable because it lacks mutuality, requires him to pay arbitration fees, gives defendant a "free peek" at his claims, and fails to satisfy the requirements of *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*). We are not persuaded.

### a. *Mutuality*

Plaintiff contends the arbitration clause lacks mutuality, referencing the sentences beginning with the word "I" (e.g., "I hereby agree to submit to binding arbitration"; "I further agree . . . that all disputes . . . which might arise out of or related to my employment with the company . . . will be submitted to binding arbitration"; "I agree that such arbitration shall be conducted under the rules of the [AAA]"). According to him, such language requires only him but not defendant to submit to binding arbitration. We disagree.

One of the issues upon which review was granted in *Baltazar* was whether "an arbitration clause in an employment application that provides 'I agree to submit to binding arbitration all disputes and claims arising out of the submission of this application' unenforceable as substantively unconscionable for lack of mutuality, or does the language create a mutual agreement to arbitrate all such disputes? (See *Roman[*,

---

[3] *Gutierrez v. Sea World LLC* (S.D.Cal. Sept. 26, 2014, No. 14-CV-0131-BTM-JMA) 2014 WL 4829087, cited by plaintiff, did not discuss the level of procedural unconscionability created when an employer omits to explain an arbitration provision.

*supra*,] 172 Cal.App.4th 1462.)" (*Baltazar v. Forever 21, Inc.*, review granted Mar. 20, 2013, S208345.)

Baltazar did not explicitly answer this question.  (See *Baltazar*, *supra*, 62 Cal.4th at p. 1241 ["primary question before us is whether [a] clause [stating 'that, in the event a claim proceeds to arbitration, the parties are authorized to seek preliminary injunctive relief in the superior court'] renders the arbitration agreement unconscionable, and therefore unenforceable, because it unreasonably favors the employer"].)  But it did address the plaintiff's argument "the arbitration agreement at issue is unfairly one-sided because it lists only employee claims as examples of the types of claims that are subject to arbitration."  (*Id.* at p. 1248.)  *Baltazar* disagreed, stating:  "The arbitration agreement at issue here makes clear that the parties mutually agree to arbitrate all employment-related claims:  that is, 'any claim or action arising out of or in any way related to the hire, employment, remuneration, separation or termination of Employee.' That provision clearly covers claims an employer might bring as well as those an employee might bring."  (*Id.* at p. 1249.)

The arbitration clause in this case similarly provides for arbitration of "all disputes and claims arising out of or relating to the submission of [the] application" and "all disputes . . . which might arise out of or relate to my employment with the company." Under *Baltazar*, such language created a mutual agreement to arbitrate all employment related disputes.  (*Baltazar*, *supra*, 62 Cal.4th at p. 1249.)

Baltazar is not entirely dispositive, however, because the agreement there apparently "provide[d] that the parties 'mutually agree' to arbitrate."[4]  (*Baltazar*, *supra*, 62 Cal.4th at pp. 1241, 1248, 1249.)  Nevertheless the opinion provides guidance and

---

[4]    It is unclear if the words "mutually agree" were contained in the arbitration agreement itself or if *Baltazar* was referring to its conclusion that the words used indicated the agreement was mutual.  The opinion does not quote the entire arbitration provision.

17

follows the reasoning of those appellate courts that have rejected plaintiff's argument that the language used in the arbitration clause lacks mutuality, and thus, is substantively unconscionable. (See *Tiri v. Lucky Chances, Inc*. (2014) 226 Cal.App.4th 231, 247 ["agreement requir[ing] arbitration for 'any and all differences and/or legal disputes' (whether by or against the employee or employer)" shows nearly unqualified "mutuality . . . , and it is far more than the '"modicum of bilaterality"' required by our state Supreme Court in employment arbitration agreements"]; *Roman*, *supra*, 172 Cal.App.4th at p. 1473 [rejecting a holding that "the mere inclusion of the words 'I agree' by one party in an otherwise mutual arbitration provision destroys the bilateral nature of the agreement"].)

In *Roman*, *supra*, 172 Cal.App.4th 1462, the employee signed a mandatory predispute agreement containing an arbitration clause that provided: "'I agree, in the event I am hired by the company, that all disputes and claims that might arise out of my employment with the company will be submitted to binding arbitration.'" (*Id*. at p. 1466.) The employee argued that the "'I agree'" language manifested only a unilateral obligation to arbitrate. *Roman* disagreed: "Absent some indicia in the agreement that arbitration is limited to the employee's claims against the employer, the use of the 'I agree' language in an arbitration clause that expressly covers 'all disputes' creates a mutual agreement to arbitrate all claims arising out of the applicant's employment." (*Ibid*.)

We also decline to find that "the mere inclusion of the words 'I agree' by one party in an otherwise mutual arbitration provision destroys the bilateral nature of the agreement." (*Roman*, *supra*, 172 Cal.App.4th at p. 1473.) By agreeing that "all disputes and claims arising out of or relating to the submission of [the] application" and "all disputes that cannot be resolved by informal internal resolution which might arise out of or relate to my employment with the company," plaintiff was doing no more than acknowledging that all disputes between him and defendant would be resolved through

binding arbitration. No separate signature was required by defendant, as it was the company that set binding arbitration of all disputes as a condition of plaintiff's employment. In short, there was a mutual obligation to arbitrate any and all employment-related issues.

Plaintiff urges us not to follow *Roman* because it was "wrongly decided," "never explained its reasons," erroneously distinguished *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238 (*Higgins*), and should not have considered the public policy favoring arbitration where the "I agree" language was not ambiguous. According to plaintiff, the better rule is set forth in *Higgins*, which found unconscionable a unilateral obligation to arbitrate where arbitration clause included *both* "'I agree'" language *and* allowed defendant to retain right to pursue certain legal remedies. (*Id.* at p. 1243.)

The other cases cited by plaintiff are to the same effect. (*O'Hare v. Municipal Resources Consultants* (2003) 107 Cal.App.4th 267, 271 [lack of mutuality found where arbitration provision reserved right of the employer to file an injunction against the employee while requiring the employee to submit to arbitration for "[a]ny claim . . . arising out of or relating to this Agreement, or the breach thereof, or your employment by [employer], or the termination of your employment," italics omitted]; *Dunham v. Environmental Chemical Corp.* (N.D.Cal. Aug. 16, 2006, No. C06-03389JSW) 2006 WL 2374703, at p. *6 [employment agreement required the employee to "arbitrate 'all disputes incidental to employment'" while the employer "retain[ed] the right 'to pursue any remedy available to it under the law' should [the employee] violate the Trade Secrets Agreement"].) Here, in contrast, the arbitration clause did not contain any similar language reserving to defendant the right to pursue legal remedies.

In *Zullo v. Superior Court* (2011) 197 Cal.App.4th 477, 486, on which plaintiff also relies, the court found the arbitration policy one-sided where it "expressly applies to *any* dispute arising out of the termination" because "disputes 'arising out of the termination' of an employee are the very claims that 'are virtually certain to be filed

19

against, not by [the employer]'" and "add[ed] a nonexclusive list of the statutes and laws to which it applies, all of which are of equal employment and nondiscrimination laws." (*Id*. at p. 486.) According to *Zullo*, "*Employees* bring actions under these laws." (*Ibid*.) But in *Baltazar,* the court rejected a similar contention that an arbitration agreement lacks mutuality where it "lists only employee claims as examples of the types of claims that are subject to arbitration." (*Baltazar*, *supra*, 62 Cal.4th at p. 1248.) We need not discuss *Zullo*'s continued viability in light of *Baltazar*, however, because the arbitration provision in this case did not list any particular claims to which it applied. Rather, it applied to "all disputes and claims."[5]

### b. *Free Peek at Plaintiff's Claims*

We also disagree with plaintiff's contention that the arbitration provision is substantively unconscionable because it provides defendant a free peek at his claims before arbitration. The bilateral nature of the dispute resolution procedure distinguishes the parties' agreement from the employment contract analyzed in *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267 (*Nyulassy*), on which plaintiff relies. In *Nyulassy*, the agreement required only the plaintiff to arbitrate his employment claims against his employer; the employer's claims against the plaintiff arising out of the employment contract were not subject to the arbitration agreement. (*Id*. at p. 1282.) The court stated: "The employment agreement—in addition to compelling plaintiff to arbitrate all of his disputes with defendant—requires him to submit to discussions with his supervisors in advance of, and as a condition precedent to, having his dispute resolved through binding arbitration. While on its face, this provision may present a laudable

---

[5] To support is contention the arbitration provision was bilateral, defendant asserts it "has demanded arbitration against [plaintiff] before AAA, and that arbitration is currently pending." We do not consider this fact as our role is to review the record before the trial court when it ruled (*In re Zeth S*. (2003) 31 Cal.4th 396, 405), and the demand for arbitration was not made until after it had done so.

mechanism for resolving employment disputes informally, it connotes a less benign goal. Given the unilateral nature of the arbitration agreement, requiring plaintiff to submit to an employer-controlled dispute resolution mechanism (i.e., one without a neutral mediator) suggests that defendant would receive a 'free peek' at plaintiff's case, thereby obtaining an advantage if and when plaintiff were to later demand arbitration." (*Id*. at pp. 1282–1283.)

But the arbitration provision here, aside from being bilateral, states that "all disputes that cannot be resolved by informal internal resolution . . . will be submitted to binding arbitration." The provision does not "require" disputes be resolved through "informal internal resolution," which is not defined in the application, and nothing limits such "informal internal resolution" to claims brought by the plaintiff—unlike the cases cited by plaintiff. (See *Nyulassy*, *supra*, 120 Cal.App.4th at pp. 1282-1283; *McKinney v. Bonilla* (S.D.Cal. July 16, 2010, No. 07CV2373 WQH (CAB) 2010 WL 2817179, p. *4; *Pokorny v. Quixstar, Inc.* (9th Cir. 2010) 601 F.3d 987; see also *Carmona*, *supra*, 226 Cal.App.4th at p. 89 [unilateral "'free peek'" provision contributed to substantive unconscionability].)

The arbitration agreement in *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695 is similar to the one here. It provided "that if the dispute 'cannot be resolved through informal internal efforts, I will submit' the claim to binding arbitration." (*Id*. at p. 710.) The court found "'informal internal efforts' are not defined in the agreement or the handbook, and there is no reasonable basis to infer the agreement requires anything other than some informal notice of a grievance before proceeding to arbitration. This case is thus far different from the provisions in *Nyulassy*, which the court found unacceptable primarily because it was yet another employer-based mechanism in an agreement permeated by unilateral provisions favoring the employer. [Citation.] Moreover, to the extent the cited language is anything other than precatory, a requirement that internal grievance procedures be exhausted before proceeding to

21

arbitration is both reasonable and laudable in an agreement containing a mutual obligation to arbitrate. It plainly does not 'shock the conscience' so as to vitiate the arbitration agreement." (*Ibid.*) Nor does the arbitration provision in this case.

### c. *Payment of Arbitration Fees*

Plaintiff asserts the arbitration provision is substantively unconscionable because it requires him to pay half the costs of the arbitration without considering his ability to do so and misinforms him he had to pay all his own attorney fees.[6] "[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Armendariz*, *supra*, 24 Cal.4th at pp. 110-111.) Recognizing this, the trial court ordered defendant to "pay all costs of the arbitration other than those that plaintiff would necessarily pay in a court proceeding." It found "[t]he issue of the costs provision is not a substantial issue" and "is a term easily severable" as it "does not permeate the application with substantive unconscionability."

Defendant maintains the cost-splitting requirement cannot be severed because "it is permeated with unconcionability" by lacking mutuality, giving defendant a free peek at his claims, and failing to comply with *Armendariz*'s requirements. We have already rejected plaintiff's first two claims. As we shall discuss in the next section, his last contention lacks merit as well.

We review the trial court's ruling on severance of an unconscionable provision for abuse of discretion. (*Lhotka*, *supra*, 181 Cal.App.4th at pp. 820-821.) Absent the fee-splitting provision, we ascertain no other possibly substantively

---

[6] Defendant points out the arbitration provision does not contain any language requiring plaintiff to "pay . . . all of the fees for any attorney he hired" and that the statement is from plaintiff's declaration in opposition to the motion to compel arbitration.

unconscionable provision in the arbitration clause. (See *Armendariz*, *supra*, 24 Cal.4th at p. 124 ["If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate"]; *Lane v. Francis Capital Management, LLC* (2014) 224 Cal.App.4th 676, 693 (*Lane*) [finding unconscionable provision severable where arbitration agreement was not permeated with unconscionability].) The trial court thus did not abuse its discretion in severing it.

### d. *Armendariz*

As an independent ground, plaintiff argues the arbitration clause fails to satisfy the five minimum requirements set forth by *Armendariz* for a valid arbitration agreement. Under *Armendariz*, "an arbitration agreement is lawful if it: '(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.'" (*Armendariz*, *supra*, 24 Cal.4th at p. 102.) The arbitration provision here fulfilled these conditions by incorporating by reference the AAA rules, specifically 12, 9,[7] 39b, 39d

---

[7]    As *Lane* explains, "the rules of the AAA . . . give the arbitrator the authority '"to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration."' [Citation.] As to discovery sufficient to vindicate unwaivable statutory rights, in *Armendariz,* the California Supreme Court concluded that by agreeing to arbitrate statutory claims, the employer impliedly agreed to all discovery necessary to adequately arbitrate the claims. [Citation.] The *Roman* court determined that '[t]here appears to be no meaningful difference between the scope of discovery approved in *Armendariz* and that authorized by the AAA employment dispute rules . . . . ' [Citation.] Thus, whether implied or in fact, the discovery permitted by the expressly referenced AAA rules satisfied the requirements of *Armendariz* for arbitration of statutory claims. In short, the lack of an express provision for discovery did not render the arbitration agreement substantively unconscionable." (*Lane, supra*, 224 Cal.App.4th at pp. 692-693.)

and 48, respectively. (*Lane*, *supra*, 224 Cal.App.4th at p. 692 ["Like any other contract, an arbitration agreement may incorporate other documents by reference"]; see *Fittante v. Palm Springs Motors, Inc.* (2003) 105 Cal.App.4th 708, 716-717 [arbitration clause satisfied the *Armendariz* requirements by incorporating the arbitration rules of the FAA and the procedures of the California Arbitration Act].)

### D. Dismissal of Class Claims

Plaintiff contends the court erred in dismissing the class claims with prejudice. We agree. Under *Sandquist*, *supra*, 1 Cal.5th 233, the determination of "*who decides* whether the [arbitration] agreement permits or prohibits classwide arbitration, a court or the arbitrator" is "in the first instance a matter of agreement, with the parties' agreement subject to interpretation under state contract law." (*Id*. at p. 241.) Interpreting an arbitration agreement containing language similar to that used in this case, *Sandquist* concluded that "[u]nder state law, these parties' arbitration agreement allocates the decision to the arbitrator." (*Ibid.*) According to the court, "[t]he remedy when an issue has erroneously been addressed by a court rather than an arbitrator is to remand with instructions that the correct decision maker consider the issue anew. [Citations.] '[T]he parties have not yet obtained the arbitration decision that their contracts foresee' [citation]; remanding 'enforc[es] the parties' arbitration agreements according to their terms' [citation]." (*Id*. at p. 261.)

*Sandquist* rejected the defendant's argument "that state law requires harmless error review in all cases before reversal will follow. [Citations.] [S]ome errors are reversible per se. The error here falls within that class requiring automatic reversal because its effects are '"unmeasurable"' and '"def[y] analysis by 'harmless-error' standards."' [Citations.] We cannot say whether an arbitrator would have decided the issue the same or differently. Indeed, to deny remand by insisting an arbitrator would surely have agreed with the trial court's view or our view of the merits of class

24

availability is to recommit the very error complained of—deprivation of a decision by a contractually agreed-upon decision maker. The denial of the parties' right to their agreed-upon decision maker is thus the sort of miscarriage of justice that requires reversal without further harmless error analysis." (*Sandquist*, *supra*, 1 Cal.5th at p. 261.)

In its supplemental brief, defendant seeks to avoid this outcome and merely argues this issue may not be considered on appeal. It asserts plaintiff "waived his right to challenge the trial court's authority to rule on the arbitrability of his class claims" by urging it to determine whether the arbitration agreement encompassed class claims and not raising the issue in the trial court. Such waiver, according to defendant, cannot be excused on the basis *Sandquist* constituted new law because its rule "was not an unforeseeable departure from existing law."

Defendant further contends the issue may not be considered for the first time on appeal as a "purely legal issue" because "the question of who decides whether an arbitration agreement is a mixed question of fact and law." Citing *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865, defendant claims that while the "interpretation of a written instrument remains a judicial function," "the task 'involves what might properly be called questions of fact.'" But *Parsons* also said "[i]t is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. Accordingly, 'An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence . . . .'" (*Ibid.*)

Here, defendant has not identified any conflict in the evidence. Thus, even assuming there was a waiver, the issue is a purely legal one that we have discretion to consider. (*People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th at 888, 901 & fn. 5 [because issue was purely legal, court would consider issue of when an evaluators' reports may be examined for material legal error, even though issue was not raised in the

courts below]; *Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 73 [consideration of statute that became effective after judgment was entered held "particularly appropriate . . . because if the [plaintiffs] are correct, [the statute] resurrects their case"].) Here, as in *Bialo*, contemplation of *Sandquist*'s effect on this case is especially proper because if it applies, it may potentially resurrect plaintiff's class claims.

"'In determining whether an arbitration agreement applies to a specific dispute, the court may examine only the agreement itself and the complaint filed by the party refusing arbitration . . . .' [Citation.] . . . Where, as here, 'there is no "*factual* dispute as to the language of [the] agreement" [citation] or "conflicting extrinsic evidence" regarding the terms of the contract [citation], our standard of review of a trial court order granting or denying a motion to compel arbitration under [Code of Civil Procedure] section 1281.2 is de novo.' [Citation.] 'We are not bound by the trial court's construction or interpretation.'" (*Rice v. Downs* (2016) 247 Cal.App.4th 1213, 1222-1223.) "Because the language of the arbitration provision was not in dispute and no conflicting evidence regarding its meaning was presented, we consider its meaning de novo." (*Elijahjuan*, *supra*, 210 Cal.App.4th at p. 20.)

To do so, we follow *Sandquist*'s application of the law to the facts in that case. *Sandquist* began by determining whether federal or state law governed its determination of "the 'who decides' question." It concluded state law did. "'When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.' [Citations.] This default choice-of-law rule applies to the question whether the availability of class arbitration is for an arbitrator or a court; insofar as the question who decides 'presents a disputed issue of contract interpretation,' 'state law, not federal law, normally governs such matters.'" (*Sandquist*, *supra*, 1 Cal.5th at pp. 243-244.)

Applying state law, *Sanquist* examined the three arbitration provisions contained in the form agreements the plaintiff was required to sign. *Sanquist* noted: "All

three arbitration provisions share the same basic structure and much of the same language. All three contain two inclusive clauses that define the range of disputes that must be 'submitted to and determined *exclusively* by binding arbitration.' Two of the three add an exclusive clause that sets out a specific, limited set of disputes, otherwise covered by the clause's inclusive language, that are nevertheless withdrawn from the arbitrator's purview." (*Sandquist*, *supra*, 5 Cal.5th at p. 245.) We concern ourselves with only the court's discussion of inclusive clauses, as the arbitration provision before us does not contain any exclusive language.

Turning to the language of the provisions, *Sandquist* noted the following similarities. "First, the provisions extend to 'any claim, dispute, and/or controversy . . . between [me/myself] and the Company.' This language is comprehensive. If a dispute or controversy is between Sandquist and Lebo Automotive, as the one before us surely is, and if it might otherwise be permissibly submitted to a court, as the question whether class arbitration is available surely could be, this portion of the arbitration clause suggests a choice to have the decision made by an arbitrator.

"Second, the provisions extend to all claims 'arising from, related to, or *having any relationship or connection whatsoever* with my seeking employment with, employment by, or other association with the Company . . . .' (Italics added.) The underlying claims in the first amended complaint assert that Lebo Automotive harassed and discriminated against Sandquist on the basis of race in the course of his employment, created a hostile work environment, and ultimately constructively discharged him. They plainly arise from Sandquist's employment with Lebo Automotive. The procedural question those claims present—whether Sandquist may pursue his claims on a class basis—directly arises from his underlying claims. Given that the provisions are intended to sweep in disputes 'having any relationship or connection whatsoever' with Sandquist's employment, that the issue before us arises from a lawsuit over Sandquist's employment

would appear enough to satisfy this nexus requirement." (*Sandquist*, *supra*, 1 Cal.5th at pp. 245-246.)

Here, the arbitration clause similarly applies to "all disputes and claims arising out of or relating to the submission of this application" and "all disputes . . . which might arise out of or relate to my employment with the company." Such language "suggests the 'who decides' question is an arbitrable one, but they are by no means conclusive." (*Sandquist*, *supra*, 1 Cal.5th at p. 246.)

*Sandquist* thus considered "other principles applicable to the interpretation of arbitration clauses and contracts generally." (*Sandquist*, *supra*, 1 Cal.5th at p. 246.) "Ultimately dispositive here are two other long-established interpretive principles. First, under state law as under federal law, when the allocation of a matter to arbitration or the courts is uncertain, we resolve all doubts in favor of arbitration. [Citations.] All else being equal, this presumption tips the scales in favor of allocating the class arbitration availability question to the arbitrator. [¶] Second, ambiguities in written agreements are to be construed against their drafters. . . . [¶] Thus, where, as here, the written agreement has been prepared entirely by the employer, it is a 'well established rule of construction' that any ambiguities must be construed against the drafting employer and in favor of the nondrafting employee. [Citations.] Moreover, '[t]he rule requiring the resolution of ambiguities against the drafting party "applies with peculiar force in the case of a contract of adhesion. Here the party of superior bargaining power not only prescribes the words of the instrument but the party who subscribes to it lacks the economic strength to change such language."' [Citation.] On the record before us, there is no dispute that the arbitration clauses were part of contracts of adhesion drafted by Lebo Automotive and imposed as conditions of employment. [¶] This general principle of contract interpretation applies equally to the construction of arbitration provisions. [Citations.] Where the drafter of a form contract has prepared an arbitration provision whose application to a particular dispute is uncertain, ordinary contract principles require that

28

the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation." (*Id.* at pp. 247-248.)

Because "Lebo Automotive could have written the description of matters within the arbitrator's purview less comprehensively," so as to "explicitly address[] any unstated desire to have the availability of class arbitration resolved by a court," but did not, "it is Lebo that 'drafted an ambiguous document, and . . . cannot now claim the benefit of the doubt.'" (*Sandquist*, *supra*, 1 Cal.5th at p. 248.) *Sandquist* "conclude[d], as a matter of state contract law, the parties' arbitration provisions allocate the decision on the availability of class arbitration to the arbitrator, rather than reserving it for a court." (*Ibid.*)

*Sandquist* controls our interpretation of the arbitration provision at hand. Given the similarities between the arbitration clauses in that case and here, and the other principles addressed by *Sandquist*, we conclude the decision regarding whether class arbitration is available was one that should have been made by the arbitrator in the first instance. Under *Sandquist*, the trial court's error in deciding the issue itself is reversible per se. (*Sandquist*, *supra*, 1 Cal.5th at p. 261.)

III

DISPOSITION

The request for judicial notice is granted. The appeal from the order granting defendant's motion to compel arbitration is treated as a petition for writ of mandate. The petition is granted in part and denied in part. Let a peremptory writ of mandate issue commanding the superior court to vacate that portion of its order dismissing the class claims to allow the arbitrator to decide whether the arbitration clause permits arbitration on a class-wide basis. In all other respects, the peremptory writ challenging the order compelling arbitration is denied. The cause is remanded to the trial

29

court for further proceedings consistent with this opinion.  The parties shall bear their own costs in this proceeding.

MOORE, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

FYBEL, J.

Filed 10/14/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| DA LOC NGUYEN,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>APPLIED MEDICAL RESOURCES<br>CORPORATION,<br><br>    Defendant and Respondent. | G052207<br><br>(Super. Ct. No. 30-2014-00748050)<br><br>ORDER GRANTING REQUEST<br>FOR PUBLICATION; NO CHANGE<br>IN JUDGMENT |

Respondent Applied Medical Resources Corporation has requested that our opinion, filed on October 4, 2016, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.

MOORE, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

FYBEL, J.