Filed 1/12/21  McLane v. GoPlus Corp. CA4/2
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| CHRISTOPHER MCLANE, | |
| Plaintiff and Respondent, | E072046, E072049 |
| v. | (Super. Ct. Nos. CIVDS1819150 & CIVDS1823718) |
| GOPLUS CORP. et al., | |
| Defendants and Appellants. | OPINION |

APPEAL from the Superior Court of San Bernardino County.  John M. Davis, Judge.  Affirmed in part, reversed in part.

Troutman Sanders, Eudeen Chang, Misha Tseytlin, Mark J. Payne and Lauren E. Grochow, for Defendants and Appellants.

Sansanowicz Law Group and Leonard H. Sansanowicz; Feldman Browne Olivares and Lee R. Feldman, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

GoPlus Corp. and Costway. Com. Inc. appeal from the trial court's order denying their joint petition to compel arbitration of Christopher McLane's claims.  The trial court denied the petition because it found that McLane did not agree to GoPlus's arbitration agreement and, even if he did, the agreement is unenforceable as unconscionable.  We reverse in part and affirm in part.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

GoPlus hired McLane in January 2018.  As part of his new employee onboarding, he had to sign an "Acknowledgment" form.  The Acknowledgment is on GoPlus letterhead, states "ACKNOWLEDGMENT" at the top, and contains three short, separately spaced paragraphs.  The first paragraph states in full:  "This is to acknowledge that I have received a copy of the Go Plus Corp, Employee Handbook.  I understand that it is my responsibility to read, understand, be familiar with and adhere to the material and information in the Handbook.  I understand that the Company may change, rescind or add to any policies, practices or procedures in the Handbook at its sole and absolute discretion.  The Company will advise employees of any such changes within a reasonable time, and in writing."  The second paragraph states in full:  "I also understand that employment with Go Plus Corp is of an at will nature, and is not for a specified term.  The employee or the employer can sever the employment relationship with or without

2

notice, with or without cause." The third paragraph, which we call the "Arbitration Agreement," states in full: "Notice: By signing this acknowledgment you are agreeing that all disputes will be decided by neutral arbitration, and you are giving up your right to a jury trial or court trial." Immediately below the Arbitration Agreement, there is a line for the employee's signature, a line for the employee's printed name, and a line for the date.

McLane filed an individual action and a class action against GoPlus and Costway alleging various employment-related claims.[1] In his individual action, he alleged claims of discrimination, retaliation, and wrongful termination. In his class action, he alleged wage-and-hour claims under the Labor Code, including one claim under the Private Attorneys General Act (PAGA; Lab. Code, §§ 2699 et seq.). GoPlus and Costway petitioned the trial court to compel McLane to arbitrate his claims, arguing that he agreed to arbitrate the claims when he agreed to arbitrate "all disputes" by signing the Acknowledgment.

The trial court denied the petition. Relying on *Metters v. Ralph's Grocery Co.* (2008) 161 Cal.App.4th 696 (*Metters*), the trial court first found that the parties did not form a contract because the Acknowledgment "doesn't even look like a contract" and thus McLane did not agree to its terms. The trial court also found that, even if the parties had agreed to the terms of the Acknowledgement, the Arbitration Agreement is

---

[1] As discussed below, except for McLane's claim under the Private Attorneys General Act (Lab. Code, §§ 2699 et seq.), the substance of McLane's claims is not relevant to the issues on appeal.

3

unconscionable and thus unenforceable. The trial court reasoned that the Arbitration Agreement lacks mutuality in that "[n]othing is said about GoPlus giving up any of its rights" and it does not explain "where the case will be arbitrated or under what rules of arbitration it would proceed."

III.

DISCUSSION

A. *GoPlus and McLane Formed a Contract*

GoPlus and Costway contend the trial court erroneously relied on *Metters*, *supra*, 161 Cal.App.4th 696, and concluded that McLane did not agree to the Arbitration Agreement despite having signed the Acknowledgment. We agree.

"""Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.""" (*Esparza v. Sand & Sea, Inc.* (2016) 2 Cal.App.5th 781, 788.) As the parties agree, "[b]ecause there are no facts in dispute, the existence of a contract is a question we decide de novo." (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165; accord, *Fittante v. Palm Springs Motors, Inc.* (2003) 105 Cal.App.4th 708, 713.)

McLane recognizes that a party who signs a contract is generally bound by its terms even if he or she did not read them. (*Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1049.) Relying on *Metters*, *supra*, 161 Cal.App.4th 696, however, he argued in the trial court that he was

4

not bound by the Acknowledgment's terms because the Acknowledgment did not "suggest[] [that] it was a contract of any kind."  The trial court agreed, finding *Metters* "controlling" and that the parties did not agree to arbitrate McLane's claims.

We disagree with McLane and the trial court that *Metters* controls here.  In *Metters*, an employee (Metters) repeatedly but unsuccessfully tried to file a discrimination grievance with his employer.  (*Metters*, *supra*, 161 Cal.App.4th at p. 699.)  Eventually, his employer gave him a form entitled, "'Notice of Dispute & Request for Resolution,'" which stated that he could submit his "'dispute for informal resolution directly by'" his employer's management.  (*Id.* at pp. 699-700.)  The form also contained arbitration provisions that were "confusing and full of legalistic references" to an unattached arbitration policy.  (*Id.* at p. 702.)  "The form explain[ed] that the [Arbitration] Policy applied to "Covered Disputes," but fail[ed] to define such disputes.  It further explain[ed] that Covered Disputes will be resolved through "'*voluntary* mediation and/or *mandatory* final and binding arbitration'" if not resolved by informal means."  (*Id.* at pp. 702-703.)  Metters filled out and submitted the form to his employer "in order to submit his dispute for resolution."  (*Ibid*.)

When Metters sued his employer in court, his employer moved to compel arbitration of his claims, arguing that he agreed to the arbitration provisions in the dispute resolution form.  (*Metters*, *supra*, 161 Cal.App.4th at p. 701.)  The trial court denied the motion on the ground there was no valid arbitration agreement, and the Court of Appeal affirmed.  (*Id.* at pp. 698, 700-701.)  The *Metters* court reasoned that "the agreement to

arbitrate was not contained in an employment contract, where it might have been expected, but in a form on which Metters was directed to submit his grievance. The context of this form did not alert him he was agreeing to anything, let alone arbitration." (*Id.* at p. 703.)

*Metters* therefore involved unique circumstances not present here. McLane did not sign the Acknowledgment at GoPlus's direction to submit a grievance. Instead, he signed it as part of his onboarding paperwork, where an arbitration agreement "might have been expected." (*Metters*, *supra*, 161 Cal.App.4th at p. 703.) Moreover, unlike the convoluted form at issue in *Metters*, the Acknowledgment "alerted" McLane in clear, conspicuous language that he was agreeing to the Arbitration Agreement. The Acknowledgement's terms and the circumstances under which McLane signed it thus called his attention to the fact that he was agreeing to a binding legal contract. (See *id.* at p. 702 [party not bound by a contract's terms "when the writing does not appear to be a contract and the terms are not called to the attention of the recipient"].)

*Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164 (*Mitri*) supports this conclusion. There, the court held employees' signatures on an employee handbook "Acknowledgment Receipt" did not establish that the employees agreed to the employer's arbitration agreement in the handbook. (*Id.* at p. 1168.) The Acknowledgement Receipt explained the purposes of the employee handbook, encouraged employees to read it, and told employees that it was subject to revisions. (*Ibid.*) It also explained to the employee that his or her "signature acknowledges that I

6

have read and understood the statements above as well as the contents of the Handbook, and will direct any questions to my supervisor or the Director of Human Resources." (*Ibid.*)  The *Mitri* court held the employees' signatures on the Acknowledgment Receipt did not mean the employees agreed to the arbitration agreement in the handbook because "[c]onspicuously absent from the acknowledgment receipt form is any reference to an *agreement* by the employee to abide by the employee handbook's arbitration agreement provision."  (*Ibid.*)

Similarly, in *Windsor Mills, Inc. v. Collins and Aikman Corp.* (1972) 25 Cal.App.3d 987, a case the *Metters* court relied on, the court declined to enforce an arbitration agreement "buried in small print on the reverse side of a form" that did not appear to be a contract.  (*Metters*, *supra*, 161 Cal.App.4th  at p. 702.)  The plaintiff signed the form to acknowledge receipt of a shipment from the defendant.  (*Windsor Mills, Inc. v. Collins and Aikman Corp.*, *supra*, 25 Cal.App.3d at p. 993.)  The court thus found the plaintiff was not bound by the "inconspicuous [arbitration] provisions of which he was unaware, contained in a document whose contractual nature is not obvious." (*Ibid.*)

Here, by contrast, the Acknowledgement is a brief, three-paragraph form with unmistakable contractual language.  Immediately above the signature line, the Arbitration Agreement states, "Notice:  By signing this acknowledgment, *you are agreeing* that all disputes will be decided by neutral arbitration." (Italics added.)  Thus, unlike the documents at issue in *Metters*, *Mitri*, and *Windsor Mills*, the Acknowledgment made

7

clear that McLane was agreeing to the Arbitration Agreement by signing the Acknowledgment in simple terms in a three-paragraph-long document with unambiguous contractual terms. As a result, McLane cannot avoid the Acknowledgment's terms, even if he did not read them. (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710; accord, *Metters*, *supra*, 161 Cal.App.4th at p. 702.)

McLane still argues that, even if he agreed to the Arbitration Agreement, it is impermissibly vague. McLane contends the Arbitration Agreement is vague because it covers "all disputes" without specifying which disputes it covers. Thus, in McLane's view, the scope of the Arbitration Agreement is ambiguous because it is unclear whether it applies to various claims he may have. He recognizes that the "the phrase 'all disputes' could be interpreted as [encompassing] every conceivable dispute between two parties," but argues the fact that the Arbitration Agreement is contained at the end of the Acknowledgment suggests that the agreement covers only disputes related to the employee handbook.

We disagree. We first note McLane has not cited, and we cannot find, any California case in which an arbitration agreement was found to be so vague as to be unenforceable. "'In California, the general rule is that arbitration should be upheld unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute.'" (*Izzi v. Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1315, abrogated on other grounds as recognized by *Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 250.) We therefore need not determine the full

8

scope of the Arbitration Agreement, but only whether it covers McLane's claims. (See *Fittante v. Palm Springs Motors, Inc.*, *supra*, 105 Cal.App.4th at p. 720 ["We find it unnecessary to dwell on plaintiff's claims of vagueness or overbreadth . . . . Plaintiff's claims here all arise unquestionably out of his employment or application for employment with the employer."].)

We conclude that it does cover McLane's claims. "The goal of contractual interpretation is to determine and give effect to the mutual intention of the parties." (*Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 763.) "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." (Civ. Code, § 1644.) Our "paramount consideration in construing [a] stipulation is the parties' objective intent when they entered into it." (*Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1341.) "That intent is to be inferred, if possible, solely from the written provisions of the contract." (*Pardee Construction Co. v. Insurance Co. of the West* (2000) 77 Cal.App.4th 1340, 1352.) A signatory's "uncommunicated subjective intent is irrelevant" to mutual assent. (*Reigelsperger v. Siller* (2007) 40 Cal.4th 574, 579-580.)

"[T]here is a strong policy favoring arbitration" under California law, so "[a]ny doubts concerning the scope of arbitrable issues will be resolved in favor of arbitration." (*Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1051.) "'"'A heavy presumption

9

weighs the scales in favor of arbitrability; an order directing arbitration should be granted "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."'"'"'" (*Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 642.)

"[T]he terms of the specific arbitration clause under consideration must reasonably cover the dispute as to which arbitration is requested." (*Bono v. David* (2007) 147 Cal.App.4th 1055, 1063.) Here, the Arbitration Agreement informed McLane that he was "agreeing that all disputes will be decided by neutral arbitration." It further stated that "you are giving up your right to a jury trial or court trial." Given that (1) the Arbitration Agreement is between McLane and GoPlus, (2) McLane was required to sign the Acknowledgment as a condition of employment, and (3) the Arbitration Agreement explained that McLane was giving up his right to a jury trial by agreeing that "all disputes" would be decided by arbitration by signing the Acknowledgment, the Arbitration Agreement reasonably covers, at a minimum, "all disputes" that McLane may have with GoPlus. (See *Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 252-253 [by agreeing that "all disputes" related to his employment would be arbitrated, the plaintiff "was doing no more than acknowledging that all disputes between him and defendant would be resolved through binding arbitration"].) If GoPlus intended the Arbitration Agreement to cover only McLane's disputes related to the employee handbook, as McLane urges, the Arbitration Agreement presumably would

10

have had narrowing language instead of broadly covering "all disputes" without limitation. (E.g., *Medical Staff of Doctors Medical Center in Modesto v. Kamil* (2005) 132 Cal.App.4th 679, 682-683 [arbitration agreement limited its coverage to "'any problem or dispute concerning the terms of this Agreement'"]; *Bono v. David*, *supra*, 147 Cal.app.4th at p. 1067 [arbitration agreement covered only disputes "involving 'the construction and application of any provision of this Agreement'"].)

McLane also argues the Arbitration Agreement is unenforceable because it does not explain how the parties' arbitration must proceed under the Agreement. As McLane notes, the Arbitration Agreement states only that "disputes will be decided by neutral arbitration," but does not explain "whether the arbitration is binding or advisory, who should pay for the arbitration, how the arbitrator is to be selected, or whether judicial review will be permitted."

The Arbitration Agreement's silence on these and other issues does not render it unenforceable. "Unless the parties otherwise agree, the conduct of an arbitration proceeding is controlled by the [California Arbitration Act (CAA).]"[2] (*Cruise v. Kroger* (2015) 233 Cal.App.4th 390, 399 (*Cruise*).) Here, the parties did not agree otherwise, so any arbitration under their Arbitration Agreement "is to be conducted in accordance with the procedures set forth in the CAA *as well as applicable case law*." (*Id.* at p. 400, italics added.) It is thus immaterial that the Arbitration Agreement is silent on the procedures or rules that control the parties' arbitration proceedings. The "only impact" of that

---

[2] The parties do not dispute that the California Arbitration Act applies here.

11

silence is that GoPlus "failed to establish [that] the parties agreed to govern their arbitration by procedures different from those prescribed in the CAA." (*Id.* at p. 399.)

Finally, McLane argues the Arbitration Agreement is unenforceable because GoPlus did not give him sufficient consideration in exchange for his agreement to arbitrate. We disagree. For the reasons explained below, we conclude McLane and GoPlus agreed to arbitrate their disputes with one another. Their bilateral agreement to arbitrate is sufficient consideration to render the Arbitration Agreement enforceable. (See Civ. Code § 1614 ["A written instrument is presumptive evidence of a consideration"]; *Bleecher v. Conte* (1981) 29 Cal.3d 345, 350 ["A bilateral contract is one in which there are mutual promises given in consideration of each other."]; *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002), disagreed with on other grounds by *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 574 fn. 10 ["Circuit City's promise to submit to arbitration and to forego the option of a judicial forum for a specified class of claims constitutes sufficient consideration."].)

In sum, we conclude McLane and GoPlus formed a contract when McLane signed the Acknowledgment. He therefore agreed to the Arbitration Agreement's terms. The trial court erred in finding otherwise.

B.  *The Arbitration Agreement Is Not Unconscionable*

The trial court agreed with McLane that, even if he agreed to the Arbitration Agreement, it is unenforceable because it is unconscionable.  We disagree.

Under Civil Code section 1670.5 and Code of Civil Procedure section 1281, if the court finds an arbitration contract or any clause of the contract to have been unconscionable when made, the court may refuse to enforce the contract.  (*Armendariz v. Foundation Health Psychcare Servs., Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).)  The doctrine of unconscionability has both a procedural and a substantive element.  (*Ibid.*)  The procedural unconscionability element focuses on oppression, lack of freedom of assent, and surprise because of unequal bargaining power and the weaker party's lack of notice of hidden or oppressive terms.  "Procedural unconscionability may be proven by showing oppression, which is present when a party has no meaningful opportunity to negotiate terms or the contract is presented on a take-it-or-leave-it basis."  (*Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1246.)

Substantive unconscionability is present when an agreement has overly harsh or one-sided terms.  (*Armendariz*, s*upra*, 24 Cal.4th at p. 114.)  Both procedural and substantive unconscionability must be present in order "'for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.'"  (*Ibid.*)  But procedural and substantive unconscionability need not be present in the same degree.  (*Ibid.*)  "'Essentially a sliding scale is invoked . . . .  In other words, the more substantively oppressive the contract term, the less evidence of

13

procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" (*Ibid.*)

The Arbitration Agreement contains "at least some degree of procedural unconscionability" because it is "an adhesion contract in the employment context." (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 243.) McLane argues the Arbitration Agreement is substantively unconscionable for two reasons: (1) it lacks mutuality and (2) it "fails to reference, let alone attach, any arbitration rules" and thus fails to satisfy *Armendariz*'s requirements for employment arbitration agreements. (See *Armendariz, supra*, 24 Cal.4th 83 [outlining five requirements for employment arbitration agreements to be enforceable].) We disagree with both points.

"An arbitration agreement is substantively unconscionable if it requires the employee but not the employer to arbitrate claims." (*McManus v. CIBC World Markets Corp.* (2003) 109 Cal.App.4th 76, 100.) Although the Arbitration Agreement refers only to McLane's agreement to arbitrate his claims with no discussion of GoPlus's obligations, this does not render the Agreement impermissibly unilateral. The Arbitration Agreement's language providing that McLane agreed "all disputes" are to be resolved by arbitration creates a mutual agreement to arbitrate all claims "[a]bsent some indicia in the agreement that arbitration is limited to [McLane's] claims against [GoPlus]." (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1466; see *Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 182 ["[W]here an arbitration agreement sets forth that 'any and all' disputes between the parties will be arbitrated, courts (including this one)

14

have found the agreement to be fully mutual in scope."]; *Nguyen v. Applied Medical Resources Corp.*, *supra*, 4 Cal.App.5th at pp. 252-253 [plaintiff agreed all disputes between him and employer would be arbitrated by signing arbitration agreement stating that "all disputes and claims" related to his employment would be arbitrated].)

In *Roman*, the parties' arbitration agreement provided that " 'I [the employee] agree, in the event I am hired by the company, that all disputes and claims that might arise out of my employment with the company will be submitted to binding arbitration.' " (*Roman*, *supra*, 172 Cal.App.4th at p. 1466.) The agreement did not contain any language that the employer likewise agreed to arbitrate its claims. (*Ibid.*) Nonetheless, the *Roman* court rejected the plaintiff's argument (which McLane similarly advances here) that this language imposed a unilateral agreement to arbitrate because there was no indication "in the agreement that arbitration is limited to the employee's claims against the employee." (*Id.* at p. 1466.)

*Nguyen* followed *Roman*. Like the arbitration agreement in *Roman*, the parties' arbitration agreement in *Nguyen* contained language providing that the employee, but not the employer, agreed to arbitrate "all disputes and claims" related to the employee's employment. (*Nguyen*, *supra*, 4 Cal.App.5th at p. 241.) The *Nguyen* court, like the *Roman* court, "decline[d] to find that 'the mere inclusion of the words 'I agree' by one party in an otherwise mutual arbitration provision destroys the bilateral nature of the agreement. [Citation.]' "

15

As in *Roman* and *Nguyen*, nothing in the Arbitration Agreement indicates it is limited to McLane's claims only.  Because GoPlus "set binding arbitration of all disputes as a condition of plaintiff's employment . . . there was a mutual obligation to arbitrate any and all employment-related issues," including any GoPlus may have.  (*Nguyen*, *supra*, 4 Cal.App.5th at p. 253.)  And even if it were unclear whether the Arbitration Agreement covered GoPlus's claims, "given the public policy favoring arbitration [citation] . . . , we would necessarily construe the [A]rbitration [A]greement as imposing a valid, mutual obligation to arbitrate."  (*Roman*, *supra*, 172 Cal.App.4th at p. 1473.)  We therefore conclude the Arbitration Agreement is bilateral and thus not substantively unconscionable for lack of mutuality.

As for McLane's second argument, *Cruise*, *supra*, 233 Cal.App.4th 390, is directly on point.  In *Cruise*, the employee signed a form acknowledging that she agreed to her employer's "Mediation & Binding Arbitration Policy" and that the policy was "incorporated by reference."  (*Cruise*, *supra*, at pp. 392-392.)  The employer moved to compel arbitration of the employee's claims, but the trial court denied the motion because it found that the employer failed to produce a copy of the arbitration policy.  (*Id.* at p. 399.)  The trial court therefore found the parties did not enter into an arbitration agreement and, even if it did, it was unconscionable.  (*Ibid.*)

The *Cruise* court reversed, reasoning that the employer's "inability to establish the precise terms" of the parties' arbitration agreement did "not relieve [the plaintiff] of the obligation to arbitration."  (*Cruise*, *supra*, 233 Cal.App.4th at p. 399.)  The court

16

explained that "[t]he only impact of [the employer's] inability to establish the contents of the . . . Arbitration Policy is that [the employer] failed to establish that the parties agreed to govern their arbitration by procedures different from those prescribed in the CAA." (*Ibid.*)  Thus, "the parties' arbitration was to be governed by the procedures set forth in the CAA as well as applicable case law." (*Ibid.*)[3]  Because the arbitration proceedings would be "controlled by California statutory and case law," the *Cruise* court held the arbitration agreement was not substantively unconscionable. (*Id.* at p. 400.)

For the same reasons, we likewise conclude the Arbitration Agreement is not substantively unconscionable.  As in *Cruise*, the CAA *and* "applicable case law"— including *Armendariz*—will govern the parties' arbitration proceedings because the Arbitration Agreement does not state the proceedings will be governed "by procedures different from those prescribed in the CAA." (*Cruise*, *supra*, 233 Cal.App.4th at p. 399.) It follows that the Arbitration Agreement's terms are not substantively unconscionable. (*Id.* at p. 400 ["Because this arbitration is controlled by California statutory and case law, Cruise's arguments that Kroger's Arbitration Policy is unconscionable, both procedurally and substantively, are meritless."].)

---

[3]  At oral argument, McLane's counsel argued for the first time on appeal that the CAA does not allow him to pursue all available remedies in arbitration that he otherwise could pursue in court in violation of *Armendariz.*  McLane waived the argument by making it for the first time at oral argument. (*Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356-357, fn.6.)  Regardless, the parties' "arbitration proceeding is to be conducted in accordance with the procedures set forth in the CAA *as well as applicable case law.*" (*Cruise*, *supra*, 233 Cal.App.4th at p. 400, italics added.)

Finally, to the extent that McLane argues the Arbitration Agreement is unconscionable because GoPlus did not attach a copy of the applicable arbitration rules, we reject the argument. Our Supreme Court explicitly held that an arbitration agreement is not substantively unconscionable if it does not attach a copy of the applicable arbitration rules. (See *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1246 ["Forever 21's failure to attach the [arbitration] rules [to employee's arbitration agreement] therefore does not affect our consideration of Baltazar's claims of substantive unconscionability."].)

C. *PAGA*

The trial court did not address McLane's argument that his PAGA claim is not arbitrable. Nor did the trial court address GoPlus's argument that McLane's PAGA claim was arbitrable if it sought unpaid wages.

GoPlus, however, waived any argument that McLane's PAGA claim is arbitrable by failing to address the issue on appeal. (*Katelaris v. County of Orange* (2001) 92 Cal.App.4th 1211, 1216 fn. 4 [issues not address in opening brief are waived].) Nonetheless, during this appeal, our Supreme Court held that unpaid wages are not recoverable under PAGA. (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175.) The trial court therefore properly denied GoPlus's petition to compel arbitration of McLane's PAGA claim. (See *id.* at p. 182 ["Because the amount for unpaid wages is not recoverable under the PAGA . . . the trial court should have denied the motion [to compel arbitration]."]; see also *Iskanian v. CLS Transp. Los Angeles, LLC* (2014) 59 Cal.4th 348

18

[valid PAGA claims are not arbitrable]; *Collie v. The Icee Co.* (2020) 52 Cal.App.5th 477, 483 ["PAGA claim seeking unpaid wages under section 558 includes an 'impermissible request for relief,'" which "cannot be compelled to arbitration any more than it can be litigated in court."].)  We therefore affirm the trial court's denial of GoPlus's petition to compel arbitration of McLane's PAGA claim.  (See *People v. Smith* (2016) 1 Cal.App.5th 266, 275 [appellate court may affirm on any basis supported by the record].)

On remand, the trial court may stay McLane's PAGA claim pending the resolution of the parties' arbitration proceedings or may allow it to proceed in the trial court so long as the claim does not seek unpaid wages.  (*Jarboe v. Hanlees Auto Group.* (2020) 49 Cal.App.5th830, 844.)  The trial court also "may consider striking the unpaid wages allegations from [McLane's] complaint, permitting [him] to amend the complaint, and other measures."  (*ZB, N.A. v. Superior Court*, *supra*, 8 Cal.5th at p. 182.)

D.  *Whether Costway Can Enforce the Arbitration Agreement*

In his opposition to Costway's petition to compel arbitration, McLane argued that Costway cannot enforce the Arbitration Agreement because it is not a signatory to it. (See *Jarboe v. Hanless Auto Group*, *supra*, 49 Cal.App.5th at p. 838 [a nonsignatory to an arbitration agreement may enforce it against a signatory "[o]nly in limited circumstances"].)  In its reply brief, Costway argued for the first time that it could enforce the Arbitration Agreement because McLane's claims against Costway are "'intimately founded in and intertwined'" with McLane's claims against GoPlus.  (See

*ibid.* [nonsignatory defendant may enforce arbitration agreement if the plaintiff's claims are "dependent on, or inextricably intertwined with, the contractual obligations of the agreement containing" the agreement].)

Neither party requested a statement of decision from the trial court on GoPlus and Costway's petition to compel arbitration, and the trial court did not prepare one. "California's statutory scheme regarding contractual arbitration . . . requires a statement of decision for any ruling denying a motion to compel arbitration if a party requests one. [Citations.] [¶] A party's failure to request a statement of decision when one is available has two consequences. First, the party waives any objection to the trial court's failure to make all findings necessary to support its decision. Second, the appellate court applies the doctrine of implied findings and presumes the trial court made all necessary findings supported by substantial evidence." (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970.)

Here, however, neither party addresses on appeal the issue of whether Costway can enforce the Arbitration Agreement. In any event, the trial court's statements at the hearing suggest that it found it unnecessary to decide whether Costway could enforce the Arbitration Agreement because the court found it unenforceable as unconscionable. But because we conclude the Arbitration Agreement is enforceable, the trial court may determine on remand whether Costway can enforce the Arbitration Agreement.

20

IV.

DISPOSITION

The trial court's order denying GoPlus and Costway's petitions to compel arbitration is reversed as to McLane's non-PAGA claims and is affirmed as to his PAGA claim. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.